DAVIS *et al.* v. HESS, *Appellant.*

---

DIVISION ONE.

---

1. **Deed, Interpretation of.** The courts, in interpreting deeds as well as wills and contracts, must ascertain the intention of the parties, and this is done by considering the instrument in its entirety.

2. ——: CALL FOR QUANTITY. In construing a deed the call for quantity may be resorted to for the purpose of making that certain which otherwise would be uncertain, and especially is this true where the land is described by sectional subdivisions.

3. ——: ——. A description in a deed of " the south half and the east half of the northeast quarter of section 9" *held* to mean to convey the south half of section 9 and the east half of the northeast quarter of the same section.

4. **Deed of Trust:** REOPENING SALE. Where a trustee in a deed of trust sells for cash, and the land is knocked off to a bidder who fails to make payment, he can reopen the sale.

5. ——: "SALE AT COURTHOUSE DOOR." A deed of trust provided that the sale, in case of default in the payment of the debt, should be "at the courthouse door in the county of Benton;" when the deed was executed there was no courthouse proper in the county, and the terms of the circuit court at the date of sale were and for years had been held in a church building at the county seat, and

103   31
48a 140

103   31
112 584

103   31
127 376

103   31
137 117

103   31
147 215

the various county officers were located in different buildings, which the county rented for their use, and the terms of the county and probate courts were also held in rented buildings; *held* that the sale was properly made at the door of the new but unfinished courthouse in process of erection by the county.

6. **Ejectment**: RECOVERY BY ONE PLAINTIFF. A party plaintiff in ejectment may recover the interest to which he is entitled in the land sued for, though his coplaintiff fail to prove any interest in the premises. (R. S. 1879, sec. 3249.)

*Appeal from Benton Circuit Court.*—HON. D. A. DeArmond, Judge.

AFFIRMED.

*Gantt & Casey* and *T. B. Wheeler* for appellant.

(1) The court erred in holding that the deed of trust of December 22, 1885, conveyed the south half of section 9. (2) The court erred in not giving instruction, numbered 1, as asked by defendant. *Kane v. McCown*, 55 Mo. 181; *Herndon v. Hawkins*, 65 Mo. 265; *Bouldin v. Ewart*, 63 Mo. 330; *Hambright v. Brockman*, 59 Mo. 52; *Napton v. Hurt*, 70 Mo. 497; *Goff v. Roberts*, 72 Mo. 570. (3) The court erred in refusing to declare the law as prayed in defendant's second instruction. (4) The court likewise erred in refusing defendant's third and fourth instructions. The fifth instruction should have been given as asked by defendant. *Stafford v. Fizer*, 82 Mo. 393. (5) The court erred in giving instructions of its own motion. "When the execution of a power is prescribed by a particular method, it implies that the mode proposed is to be followed, and it contains a negative upon every other mode." 4 Kent's Com. [2 Ed.] 148; *Ivy v. Gilbert*, 2 P. Wms. 13; *Mills v. Banks*, 3 P. Wms. 1; 2 Jones Mortgages, 1907; *Bigler v. Waller*, 14 Wall. 297; *Graham v. King*, 50 Mo. 22; *Landrum v. Bank*, 63 Mo. 51. (6) Again, said instruction is bad in that it attempts to validate said sale because Hess, the mortgagor, was present. The whole proceeding was conducted without

Davis v. Hess.

his assent, and without anything said or done by him that would estop him from demanding that his title should be divested strictly in accordance with his deed. *Spurlock v. Sproule*, 72 Mo. 503; *Monks v. Belden*, 80 Mo. 639; *Acton v. Dooley*, 74 Mo. 63. (7) The conduct of the sheriff, Payton, was oppressive. His demand, that $6,700 should be paid in thirty minutes, was harsh and unreasonable, and demonstrates that he had no conception of the duty of a trustee. Besides, he never tendered the first bidder a deed. He had no right to demand the money until he tendered Mrs. Hess her deed on her bid. "The law will not permit a trustee to be a nose of wax, a mere figure-head in the hands of a creditor." *Vail v. Jacobs*, 62 Mo. 130; 2 Jones on Mortgages [2 Ed.] secs. 1614, 1866, 1906; *Goldsmith v. Osborne*, 1 Edwds. New York Ch. 560. (8) There is no innocent third person in this case.

*J. H. Lay* and *W. S. Shirk* for respondents.

(1) While the advertisement of the sale under the deed of trust recites the date of the deed of trust incorrectly, it refers correctly to the book and page where it is recorded. So that no one could be misled or any injury done. But, in the execution of a power, any reference showing an intention to execute it is sufficient. *Reilley v. Chouquett*, 18 Mo. 220; *Collier's Will*, 40 Mo. 287; *Hazel v. Hogan*, 47 Mo. 277; *Peas v. Iron Co.*, 49 Mo. 124; *Turner v. Timberlake*, 53 Mo. 371; *Porter v. Schofield*, 55 Mo. 56; *Owen v. Ellis*, 64 Mo. 77; *Campbell v. Johnson*, 65 Mo. 439. And a false reference should surely be disregarded when there is a true one giving ample notice of the power. Failure to mention name of grantor in advertisement does not affect the validity of the instrument. *Ohnsburg v. Turner*, 87 Mo. 127. (2) A mortgagee may recover possession after the debt is due without foreclosing, and the same rule seems to apply to a trustee in a deed of trust in the nature of a mortgage.

*Johnson v. Huston,* 47 Mo. 227 ; *Siemers v. Schrader,* 88 Mo. 20 ; *Davis v. Bessehl,* 88 Mo. 439 ; *Masterson v. Railroad,* 72 Mo. 342 ; *In re Mayfield,* 17 Mo. App. 684, on 688 ; *Campbell v. Allen,* 38 Mo. App. 27. (3) The description, south half and the east half of the northeast quarter of section 9, is ambiguous. It may mean four hundred acres or one hundred and twenty ; but cannot be construed to mean other than four hundred acres when read in connection with the total number of acres called for in the deed of trust and trustee's deed, viz., five hundred and forty. *Burnett v. McCluey,* 78 Mo. 676 ; *Prior v. Scott,* 87 Mo. 303 ; *Deal v. Cooper,* 94 Mo. 62 ; *Wolf v. Dyer,* 95 Mo. 545 ; *Baxter v. Wilson,* 95 N. C. 137. And where a description is equivocal it will be construed favorably to the grantee. Martindale on Conveyancing, sec. 99, and cases cited. (4) A trustee cannot sell again on same day when the bidder fails to pay ( *Barnard v. Duncan,* 38 Mo. 170 ; *Dover v. Kennerly,* 38 Mo. 469 ; *Judge v. Booge,* 47 Mo. 544 ), without announcing at first sale that he will resell at a given time unless the bid is paid at that time. *Judge v. Booge,* 47 Mo. 544 ; *Bank v. Sternberg,* 3 Mo. App. 568. (5) In cases where deeds of trust have provided for sales at the courthouse door, and at the time of sale no court-house in the strict sense of the word, that is no house built, and used by the state authority exclusively for judicial purposes, was in existence, the courts have upheld sales made in a variety of ways, and at places called courthouse doors in a variety of senses. *Kane v. McCown,* 55 Mo. 181 ; *Hambright v. Brockman,* 59 Mo. 52 ; *Bouldin v. Ewart,* 63 Mo. 330 ; *Napton v. Hurt,* 70 Mo. 497 ; *Goff v. Roberts,* 72 Mo. 570 ; *Johnson v. Cock,* 35 N. W. Rep. 406 ; 37 Minn. 530. After the great fire in Chicago, the supreme court of Illinois held that trustees' sales should be made at the ruins of the old courthouse ( *Waller v. Arnold,* 71 Ill. 350 ; *Chandler v. White,* 84 Ill. 435), and at the building in temporary use as a courthouse. *Gregory v. Clark,* 75 Ill. 485 ;

*Alden v. Goldie,* 82 Ill. 581 ; *Wilhelm v. Schmidt,* 84 Ill.
183 ; 2 Jones on Mortgages, sec. 1848, *et seq.* A sale
made at a place where sales were commonly made was
held good where the description of the place of sale was
indefinite in the deed of trust. *Hornby v. Cramer,* 12
How. Pr. ( N. Y. ) 490. ( 6 ) Appellant cannot try his
case on one theory in the court below and on a different
one here. *Newton v. Miller,* 49 Mo. 298 ; *Davis v.
Brown,* 67 Mo. 313 ; *Whetstone v. Shaw,* 70 Mo. 575 ;
*Noble v. Blunt,* 77 Mo. 241 ; *Walker v. Owen,* 79 Mo.
563 ; *Howes v. Braidwood,* 82 Mo. 617 ; *Fell v. Coal
Mining Co.,* 23 Mo. App. 216.

BLACK, J.—This is an action of ejectment com-
menced by David E. Davis and George C. Heard against
the defendant Hess to recover seven hundred acres of
land in Benton county. The plaintiff Davis obtained
judgment and defendant appealed.

The defendant Hess, by his deed, dated first of Sep-
tember, 1883, conveyed to Chapman one hundred and
sixty acres of the land in suit, in trust to secure four
notes amounting to $2,000, all payable to Scotchbrook.
Default having been made, the trustee sold the land on
the seventh of March, 1887, and the plaintiff Davis became
the purchaser. On the twenty-second of December,
1885, the defendant made another deed conveying the
remaining five hundred and forty acres to plaintiff
Heard, in trust to secure three notes amounting to about
$8,000, payable to plaintiff Davis, and on the fifth of
February, 1887, the sheriff of Barton county, acting as
trustee, sold the land to George Davis who conveyed the
same to the plaintiff, David E. Davis.

The plaintiff Davis, it will be seen, claims title to
all of the land through these deeds of trust and the sales
made thereunder. The defense is that the sales were ille-
gal for various reasons, and should be set aside, though
there is no offer to redeem. Several questions are made
concerning the sale of the five hundred and forty acres

which are not common to the other sale, and these questions will be considered first.

1.   The description of the lands in this deed of trust upon the five hundred and forty acres begins with these words :   "The south half and the east half of the northeast quarter of section 9," and, after describing several other parcels in different sections by sectional subdivisions, concludes, "containing in all five hundred and forty acres."

The plaintiff contends that the description of the lands in section 9 means the south half of section 9, and the east half of the northeast quarter of section 9, thus conveying four hundred acres ; while the defendant insists that the words, *south half*, as well as *east half*, refer to the northeast quarter.   This construction would, at first, appear to convey two eighty-acre tracts, but it only includes one hundred and twenty acres, for one forty-acre tract is common to both eighties. The rule of law is well settled that the call for quantity may be resorted to for the purpose of making that certain, which otherwise would be uncertain, and especially is this true where the lands are described by sectional subdivisions as in the case in hand. *Burnett v. McCluey*, 78 Mo. 676 ; *Prior v. Scott*, 87 Mo. 303 ; *Wolfe v. Dyer*, 95 Mo. 545.   If we read the description of the lands in section 9 as conveying the south half of section 9, and the east half of the northeast quarter of the same section, we avoid a double description of any part thereof, and the land conveyed will also conform to the call for quantity.   That this is the true meaning, and the one which conforms to the intention of the parties to the deed, we have no doubt whatever.   In deeds as well as in wills and contracts, we are to determine the intention of the parties thereto, and that is done by taking the instrument as a whole.

2.   The deed of trust provides that, in case of the absence of Heard, the trustee, from the county of Benton, or in case of his refusal to act, the sheriff of

Benton county, may sell under the terms thereof. As Heard was absent from the state and refused to act as trustee in making the sale, there can be no doubt but the sheriff had the right to sell. But it is insisted that this sale made by him should be set aside because of the conceded fact that he made proclamation that the purchase price must be paid to him in thirty minutes after the sale. This conduct, on the part of the sheriff, it is claimed, was oppressive.

The evidence shows that defendant Hess and his wife were present at the sale. She bid something over $6,000, and the land was knocked off to her. She did not pay or offer to pay the purchase price ; nor did the sheriff tender her a deed. After she bid in the land the sheriff asked her what she could do, and she said she did not know ; she then left and did not return to the place of sale, and the sheriff resold the property and Davis became the purchaser at the price of $6,900.

The sheriff in making the sale occupied the position of the trustee, and he was in duty bound to act in good faith as an indifferent person, and adopt all reasonable methods of proceeding in order to make the land bring the most money ; but he was not called upon to pursue that course which would compel him to readvertise the property. Had he suffered the bidders to disperse without any proclamation as to when he would resell, it would have been his duty to readvertise. *Judge v. Booge*, 47 Mo. 545. The sale was a cash one and he had a right to demand payment at the time of the sale. There is no claim here that Mrs. Hess had or could then procure the money had a longer time been given. The only inference which we can draw from the evidence is that she bid, not in good faith, but for the purpose of frustrating the sale. The sheriff appears to have acted as a prudent person would have acted under the existing circumstances, and there is no evidence of oppressive conduct on his part.

3.  Both deeds of trust provide for a sale "at the courthouse door in the county of Benton;" and the next question is whether these sales were made at the proper place.  When the deeds of trust were executed, in 1883 and 1885, there was no courthouse proper in Benton county.  The old courthouse which was located on the public square in Warsaw had become unsafe and had been removed.  At the date of the sales, February 5 and March 7, 1887, the terms of the circuit court were and for years had been held at a church building in Warsaw, which the county court rented for the purpose of holding the circuit court therein.  The building was rented and used by the county for the purpose of holding the terms of that court and for no other purpose whatever.  The county clerk and sheriff had their offices in small buildings on the courthouse square, and the terms of the county court were held at the office of the county clerk.  The probate court was held in a building across the street.  The county then had under process of construction a new courthouse on the site of the old one on the public square, which was completed on the outside, but not on the inside, and it had not yet been used for courthouse purposes.  Both sales were made at the door of this new but unfinished building.  Other sales under mortgages and deeds of trust had been made at the same place.  Both sales were well attended, and there is no evidence that any person was misled as to the place of the sale.

Sales under powers contained in mortgages and deeds of trust have always been regarded by this court as a harsh method of cutting off the equity of redemption, and hence it has been held that the utmost fairness must be observed in the execution of such powers.  But as said in *Waller v. Arnold*, 71 Ill. 350, such strictness and literal compliance should not be exacted as will destroy the power.  This would render valueless the security intended to be afforded.  These parties

intended there should be a sale upon the contingencies named, and they fixed the courthouse door as the place where it should take place. In ascertaining this place we must look to the circumstances as they existed at the date of the sales. In doing this we do not see how a person in search of the place named in the deed of trust could be misled. With a church building used by the county for a few weeks in the year for holding the circuit court only, the county officers scattered around in different buildings, and a structure erected on the public square expressly for a courthouse, we think no one would hesitate in calling the latter the courthouse within the meaning of the deeds of trust, though not yet completed. Of the prior cases cited from this court by the appellant, that of *Hambright v. Brockman*, 59 Mo. 53, is most in point. There the courthouse building had been taken down to the first story and was in a state of reconstruction. The county court had procured another building temporarily for courthouse purposes, at which the sale was made, and it was held that the sale was made at the proper place.

That case is quite unlike the one in hand; for here the only building which was or could be called a courthouse was the new one built for courthouse purposes. The sales, we conclude, were made at the proper place.

4. We do not see why Heard, the trustee, who refused to act was made a party plaintiff in this case. But under our statute one plaintiff in ejectment may recover the interest to which he is entitled, though a coplaintiff may fail to prove any interest in the premises. R. S. 1879, sec. 2249. The fact, therefore, that Heard did not and was not entitled to recover any interest in the land is no reason why the judgment in favor of Davis should be reversed. It is unnecessary to review the instructions given and refused; for on the undisputed facts the judgment is for the right party, and it is affirmed. All concur.