WING v. RED et al.†

(Court of Civil Appeals of Texas. Galveston. Feb. 16, 1912. Rehearing Denied March 7, 1912.)

1. DEEDS (§ 114*)—PROPERTY CONVEYED—DESCRIPTION.

A deed of 200 acres, to be taken out of a corner of a larger tract of the grantor, passes title to the grantee to 200 acres, and confers on the grantee the right to select and locate the 200 acres out of such corner of the larger tract.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

2. BOUNDARIES (§ 47*) — ESTOPPEL — ACTS CONSTITUTING.

A grantee of 200 acres, to be taken out of the larger tract of the grantor, located by

mistake the 200 acres partly on land not within the larger tract. The deed was recorded, and no one was misled by the mistake, and the grantee, on discovering the mistake, subsequently located the 200 acres within the larger tract. *Held*, that the grantee was not estopped from relocating the 200 acres within the larger tract and recovering the land relocated.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 227–231; Dec. Dig. § 47.*]

3. PARTITION (§ 78*)—PLEADINGS—RELIEF.

Where a party in a suit for partition asked that a definitely described part of the land be set apart to him, and prayed for such other relief as to the court might seem equitable, the court, in the interest of justice, could set apart to the party other land than that claimed by him in his pleading.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 265–273; Dec. Dig. § 78.*]

4. HUSBAND AND WIFE (§ 264*)—COMMUNITY PROPERTY.

Evidence *held* to justify a finding that real estate was community property of a husband and wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 916; Dec. Dig. § 264.*]

5. BASTARDS (§ 6*)—EVIDENCE.

Evidence *held* to justify a finding that a child was illegitimate.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 9, 10; Dec. Dig. § 6.*]

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Action by Wilson D. Wing against Button Red and others. From a judgment granting insufficient relief, plaintiff appeals. Affirmed.

H. C. Howell, for appellant. W. W. Blake, for appellee Charles Red.

PLEASANTS, C. J. This is a suit for partition, brought by appellant against appellees.

The land involved is a tract of 419 acres, less 3½ acres, a part of the Joseph Lane league in Jasper county. Plaintiff alleges that said tract of 419 acres, less the 3½ acres, both of which tracts are described in the petition, is owned jointly by himself and the defendants, Button Red, George Red, Harriet Rhodes, Pattie Southwell, Fannie Horn, Charles Red, and Dennis Red; that the plaintiff is the owner of an undivided one-half, or 207¾ acres, of said land, and defendants own the remaining one-half. The defendants Button Red and Dennis Red answered plaintiff's petition by general denial. None of the other defendants, except Charles Red, filed any answer. This last-named defendant filed an answer, in which he admits that plaintiff is a tenant in common with himself and other defendants in a part of the tract of land described in the petition, but denies that plaintiff owns an undivided one-half of said land, as alleged in the petition. It is then averred, in substance, that the land described in plaintiff's petition is a part of a 1,500-acre tract that was formerly owned by John Red and his wife, Rose, both of whom are now deceased, and that said defendant,

on February 14, 1871, purchased from John Red a tract of 200 acres, to be taken out of the southeast corner of said 1,500-acre tract; "that said defendant, immediately after his purchase, took possession of his said land and improved the same for a homestead, and has resided on said land as a homestead since the date of his said purchase." Here follows field notes of the 200 acres claimed by the defendant under his said purchase, which shows that said 200 acres conflicts, to the extent of 114 acres, with the 419 acres described in plaintiff's petition. This defendant further pleads title by 10 years' limitation to said 200-acre tract, and prays that upon a hearing he be quieted in his title thereto, and that the remainder of said 419-acre tract, described in plaintiff's petition, be partitioned between plaintiff and the defendants herein, all of whom hold, under John Red and his said wife, title in common to the remainder of said 419 acres. The interest claimed by this defendant in said remainder being two-twenty-eighths thereof, which he prays shall be set apart to him and located adjoining his 200-acre tract before described. He also prays "for such other and further relief as may seem to the court equitable."

The trial in the court below, without a jury, resulted in a judgment in favor of this defendant for 200 acres of land taken out of the 1,500-acre tract, and including 114 acres of the land described in the petition, but not located in accordance with the field notes contained in defendant's answer. The remainder of said 419 acres was ordered partitioned between the plaintiff and the defendants, other than Charles Red, who was denied any interest therein. Plaintiff alone prosecutes this appeal.

The facts disclosed by the evidence are as follows:

The land in controversy is a part of a tract of 1,500 acres on the Joseph Lane survey, which was conveyed to John Red by William Traylor and wife, Elizabeth Traylor, by deed of date January 2, 1871. This deed was duly recorded in the deed records of Jasper county on June 21, 1871. On February 4, 1871, John Red, by his deed of said date, conveyed to the defendant Charles Red 200 acres out of this 1,500-acre tract; said 200 acres being described as follows: "Two hundred acres of land to be surveyed out of the southeast corner of a survey of land deeded to me by William Traylor and his wife, Elizabeth Traylor, lying in Jasper county on Everett's creek about seven miles S. E. from the town of Jasper." This deed was duly recorded in the deed records of Jasper county on June 21, 1871.

A short time after his purchase, Charles Red built a house and made other improvements on the southeast corner of the 1,500-acre tract, and has resided there ever since

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

that time. Fifteen or 20 years before the trial in the court below, which occurred in December, 1910, he had a surveyor to run the lines of 200 acres of land, which included his improvements, and which he supposed was included within the boundaries of the 1,500-acre survey; but, owing to a mistake as to the true location of the south line of the Joseph Lane survey, which is also the south line of the 1,500-acre tract, 114 acres of the 200 acres so surveyed for defendant was not within the boundaries of the 1,500-acre tract, but was located on a survey adjoining the Joseph Lane on the south. The surveyor discovered there was doubt as to the true location of the Joseph Lane line before he completed the survey of the 200 acres, and for this reason did not run the closing line of the 200-acre tract, which was its west line, and informed Charles Red of his reason for not completing the survey. The evidence shows that, notwithstanding the surveyor's expressions of doubt as to the true location of the Joseph Lane line, the defendant Charles Red and John Red, and others who acquired interests in the 1,500-acre tract under him, all believed until a comparatively recent date that the south line of the Joseph Lane survey was located as it was supposed to be when the 200 acres was attempted to be located as before shown.

Prior to the sale of the 200 acres to Charles Red, John Red sold a tract out of the 1,500 acres to Simon Horn, which was located immediately north of the Charles Red 200-acre tract, as that tract was subsequently surveyed and located; the north line of the Charles Red being the south line of the Simon Horn tract.

In 1904, Charles Red, having become satisfied as to the true location of the south line of Joseph Lane survey, which, as before stated, is also the south line of the 1,500-acre tract, had his 200 acres resurveyed. Owing to the previous location of the Simon Horn tract, it was impossible to locate said 200 acres in the form of a square in the southeast corner of the 1,500-acre tract, and it was located in the shape of a parallelogram, and included all the land in the southeast corner of the 1,500-acre tract lying between the south line of said tract and the south line of the Horn tract, and extended along the south line of the 1,500 acres to within a short distance of the west line of said tract. This 200 acres was the land claimed by the defendant Charles Red in his answer, 114 acres of which conflicts with the 419 acres described in plaintiff's petition.

John Red and Rose Red had six children. Plaintiff, Wing, owns by purchase the interest of three of these children. The defendant Charles Red is the illegitimate son of John Red. After the death of Rose Red, which occurred prior to the time the resurvey of the 200 acres was made for Charles Red, John Red divided the land he then held on the 1,500-acre tract, which consisted of about 700 acres, and set apart the 419 acres described in plaintiff's suit to the six children of Rose Red. It does not appear that any deed of partition was executed between these parties. At the time this division was made, all of the parties believed that the south line of the original tract was located as it was supposed to be at the time the Charles Red 200 acres was first located. The quantity of land on this 1,500-acre tract belonging to the estate of John Red is shown to be 135 acres in addition to the 419 acres described in plaintiff's petition.

The land set apart to defendant Charles Red by the judgment of the court below includes the land between the Horn tract and the south line of the survey, which contains about 84 acres, upon which the defendant's improvements are located, and a tract in the shape of a square west of and adjoining said 84 acres and the Horn tract, and having for its south boundary the south line of the 1,500-acre tract. As designated in the judgment, the land set apart to this defendant is in the southwest corner of the 1,500-acre tract, and there is nothing in the record to indicate that its location is not fair and equitable as to all of the parties to this suit.

[1] Appellant's first assignment of error and the proposition submitted thereunder are as follows: "The court erred in finding and decreeing, as a matter of law, that the defendant Charles Red was entitled to recover of plaintiff and the other defendants herein, and have surveyed and set apart to him, the said Charles Red 114 acres of land out of the 419 acres in controversy in this cause, because, the said Charles Red failed to exhibit any right or title to any part of said 419-acre tract." "A vendee of land cannot recover of the vendor or his heirs other land, in lieu of land purchased by such vendee from such vendor, in which there is a shortage or deficiency in area or acreage; the remedy in such case being for abatement of purchase price, or recovery of purchase money in proportion to such shortage or deficiency." This proposition is unquestionably sound; but it is not applicable to facts of this case. There was no shortage or deficiency in the land conveyed to the appellee by John Red. The deed conveyed 200 acres, to be taken out of the southeast corner of the 1,500-acre tract. At the time this deed was executed, John Red owned not less than 700 acres of the 1,500-acre tract, situated in the south and southeast portions of said tract. The deed did not convey any land on the tract adjoining the 1,500 acres, to which John Red had no title. This deed passed title to Charles Red to 200 acres out of that portion of the 1,500 acres then owned by the grantor, and conferred upon him the right to select and locate 200 acres out of the southeast corner of said tract. Wofford v. McKinna, 23 Tex. 46, 76 Am. Dec. 53; Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 467, 66 Am. St. Rep. 863.

[2] The appellee's title to 200 acres out of

that portion of the 1,500-acre tract owned by John Red was not lost by his having 200 acres located by mistake partly upon land not within the boundaries of the 1,500-acre tract. There can be no question that when this mistake was discovered, as between appellee and his grantor, he would have the right to have his land relocated, and recover and hold 200 acres out of the land of said grantor on said 1,500-acre tract. The facts in this case do not raise the issue of estoppel against appellee. His deed, which conveyed him 200 acres out of the 1,500-acre tract, was promptly recorded, and appellant is charged with notice of appellee's title to said 200 acres. There is nothing in the evidence to show that the mistaken claim of appellee under his first location of the 200 acres was even known to appellant, and nothing to indicate that appellant was in any way misled thereby, or induced to purchase from the heirs of Rose Red their undivided interest in the 419 acres. We think the assignment should be overruled.

[3] The second and third assignments of error complain of the judgment, on the ground that the court was not authorized to set apart to appellee other land than that claimed by him in his answer. The suit is one for partition; and, while appellee asked that a definitely described portion of the land sought to be partitioned be set apart to him, he also prayed for such other relief as to the court might seem equitable. There is no complaint made by either party that there is any unfairness or injustice in the location made by the court of the land set apart to appellee. We think the record fails to show that the court was not authorized to render such judgment, and the assignments are overruled.

The fourth assignment assails the judgment, on the ground that appellee is estopped by his first location of the lines of his 200 acres to claim any portion of the 419-acre tract. For the reasons before stated, we do not think the evidence raises the issue of estoppel. This disposes of all the assignments presented by appellant.

[4, 5] Appellee, by cross-assignments, complains of the findings of the court that the 419 acres of land was the community property of John and Rose Red, and that appellee Charles Red was not a legitimate son of John Red. The evidence shows that John and Rose Red were former slaves, and prior to the emancipation of the slaves lived together as husband and wife, and after emancipation continued to live together in that relation. During slavery, and prior to his living with Rose, John Red lived with a woman named Cinthy, who was his then slave wife, and who was the mother of appellee. Prior to the emancipation of the slaves, he abandoned Cinthy and took Rose for his wife, and, as before said, continued to live with her and claim her as his wife. These facts

sustain the finding of the trial court that the appellee was an illegitimate child, and that the land was the community property of John and Rose Red. We do not think any of the assignments point out any error which requires a reversal of the judgment of the court below; and it is therefore affirmed.

Affirmed.