PHOENIX MUT. LIFE INS. CO. *et al. v.* KINGSTON BANK & TRUST CO. *et al.*

(*Knoxville*, September Term, 1937.)

Opinion filed Jan. 18, 1938.

336

AYRES, BROUGHTON & PARKEY, of Knoxville, for complainants and cross-defendants Phœnix Mut. Life Ins. Co., and Tom W. Mayberry, substitute trustee.

R. H. WARD, of Kingston, for defendant and cross-complainant Kingston Bank & Trust Co.

HAMMOND FOWLER and J. RALPH TEDDER, both of Rockwood, for cross-defendant L. E. Ford, receiver.

MARTIN GUTHRIE, of Harriman, for Wm., W. F. and Tommy Brown.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This appeal presents a contest as to their rights in and to certain lands formerly the property of William Brown between Kingston Bank & Trust Company on the one hand and the Phœnix Mutual Life Insurance Company, First National Bank of Rockwood, and W. F. and Tom-

338

my Brown, children of William Brown, on the other. The Kingston Bank is a judgment creditor of Brown. The insurance company is the holder of a note for $25,000 secured by a first mortgage. The Rockwood Bank is the holder of a note secured by a second mortgage. The Brown children are grantees subject to both mortgages. The chancellor decided against the Kingston Bank.

In 1925, Brown, being the owner of a large body of land in a horseshoe bend of the Tennessee river, undertook to convey some 929 acres thereof in trust to secure a loan of $25,000 evidenced by the note for that sum now held by the Phœnix Mutual Life Insurance Company. There is no doubt upon the record that the parties to this transaction understood that this mortgage covered an acreage of that extent. That mortgage was duly recorded. The description of the land contained in this first mortgage was followed in the second mortgage and the same description was contained in Brown's deed to his children. The last two instruments were also duly recorded.

Some years after the registration of all these instruments, the Kingston Bank obtained a judgment against Brown and undertook to levy an execution on 480 acres of the land which the grantees of the several conveyances aforesaid contend are included therein. The Kingston Bank apparently contends that the description of the land in the three deeds is too indefinite and uncertain to give notice of the identity of the land intended to be conveyed and, at all events, that the description properly construed excludes the 480 acres which the bank seeks to reach.

■ ■ To be sure a valid deed must designate the land intended to be conveyed with reasonable certainty.

*Sheid* v. *Stamps,* 34 Tenn. (2 Sneed), 172, 173. And the failure of a registered instrument to describe property intended to be conveyed leaves that property open to seizure by creditors of the grantor. *Building & Loan Association* v. *Rodgers,* 104 Tenn., 437, 58 S. W., 234.

The description of the land contained in the mortgage securing the insurance company's note is as follows:

"Situated in the Fourth (old 11th) Civil District, in the County of Roane, in the State of Tennessee, to-wit: A tract of land lying and being situate in the district, county and State aforesaid about five miles southeast from Rockwood, Tennessee, and bounded generally as follows: On the north by Tennessee River and DeArmond; on the east by Tennessee River and Brown; on the south by Tennessee River and McPherson; on the west by Tennessee River, and containing 929 acres, more or less, and being more particularly described by metes and bounds as follows:" (Then follows the description by metes and bounds containing numerous courses.) The description concludes in these words: "and being the same property conveyed to William Brown by B. M. Johnson by deed dated October 26, 1905, and which is of record in the Register's Office of Roane County, Tennessee, in Deed Book M, Series 3, page 460, and also the same property conveyed to the same William Brown by J. G. Crumbliss, Clerk and Master of the Chancery Court of Roane County, Tennessee, by deed dated October 26, 1905, and which is of record in the Register's Office of Roane County, Tennessee, in Deed Book M, Series 3, page 458."

The outside boundaries of the 929 acres intended to be conveyed are correctly stated in this description by references to adjacent owners and to the river. The

courses and distances given are in some respects inaccurate. The references to deeds through which Brown obtained title to the 929 acres are incomplete, and upon this last imperfection the Kingston Bank largely relies.

■■ Passing over the references to former deeds, the description of the land by references to adjacent owners and to the river is sufficient to identify it—to comply with the statute of frauds and also to put creditors on notice of the land intended to be conveyed. Also, there being inaccuracies in the metes and bounds, the rule is that in any description of large bodies of land, courses and distances yields to calls for natural objects and to calls for the lines of adjacent owners. *Pritchard v. Rebori,* 135 Tenn., 328, 186 S. W., 121.

A plat is sent up with the record showing the 929 acres and other lands of Brown in this bend of the river. According to this plat, the 929 acres is made up of eight smaller tracts of land. It is insisted that a tract of land containing less than 929 acres could have been laid out from the Brown lands bounded by the river and by the same adjacent owners; that a tract of more than 929 acres could have been laid out from the Brown lands bounded by the river and by the same adjacent owners.

This seems to be true, but the smaller tract would have contained much less than 929 acres and the larger tract would have contained much more than 929 acres. The acreage stated in the three deeds aforesaid—929 acres—identified the particular tract of land intended to be covered by these instruments. This matter was considered by the Court of Appeals and by this court in *Bynum v. McDowell,* 3 Tenn. App., 340, 351. In that case Judge Faw observed:

██ ██ "The rule of law is well settled that the call
for quantity may be resorted to for the purpose of making
that certain which otherwise would be uncertain. *Davis
v. Hess,* 103 Mo., 31, 36 [15 S. W., 324]. The number of
acres named is sometimes the matter of description
which locates and identifies the land. *Carter* v. *Barnes,*
26 Ill., 454; *Harris* v. *Byers,* 112 Miss., 651 [73 So., 614];
*Soukup* v. *Union Investment Co.,* 84 Iowa, 448 [51 N.
W., 167], 35 Am. St. Rep., 317; *Wing* v. *Red* (Tex. Civ.
App.), 145 S. W., 301; *Brodsky* v. *Nelson,* 57 Wash., 671
[107 P., 840]."

The quoted statement is well supported by the author-
ities cited.

So, omitting the references to previous deeds, the de-
scription of the land given in the two trust deeds and
in Brown's deed to his children is adequate.

Referring again to the plat sent up with the record,
showing the 929 acres to be made up of eight smaller
tracts, it appears that the deed of B. M. Johnson to
Brown and the deed of Crumbliss, clerk and master, to
Brown, mentioned as Brown's sources of title to the
929 acres, only cover tracts 1, 2, 3, 4, 5, and 6. Brown
obtained tracts 7 and 8 by deed of Crumbliss, clerk and
master, to Brown and Qualls and by deed of Qualls of
his interest to Brown.

The principal contention of the Kingston Bank is
that reference to previous deeds is controlling in the
description and that the description under consideration
only embraced the land acquired directly by Brown from
Johnson and from Crumbliss, clerk and master, and
not the land acquired from Crumbliss, clerk and master,
through Brown and Qualls. In other words, that the

description covered only tracts 1, 2, 3, 4, 5, and 6 and left tracts 7 and 8 open to seizure by Brown's creditors.

We are referred to many decisions of this court in which it has been held that reference to a prior deed or grant for description, without more, incorporates the description of that deed or grant into the later instrument. We, however, find only two decisions of this court which can at all serve as a basis for an argument that references to previous deeds or grants control description when the description in the previous instruments conflicts with a valid and definite description in the later instrument.

In *Oldham* v. *York,* 99 Tenn., 68, 41 S. W., 333, 334, the description in a will was as follows: ''The tract of land I now own in district No. 4, containing by estimation 1,407 acres, which I purchased by deed from Kenneth Raynor, and is recorded in the register's office of said county, in Book No. 5, page 536, to which reference is here made for metes and bounds.''

The description contained in the deed referred to was held controlling although the earlier deed covered less than 1,407 acres. It will be noticed, however, that the only description in the later deed, exclusive of the reference, was ''1,407 acres,'' in the district named.

In *Byrd* v. *Phillips,* 120 Tenn., 14, 111 S. W., 1109, there is a quotation from a certain text indicating that a definite and specific reference to a previous deed for description may control a specific description in a later deed.

There was no specific reference for description to earlier deeds in the deeds of Brown that are before us for construction. There was only a general reference to the two earlier deeds and the reference may have been to show the chain of title.

██ ██ It is well settled by our cases that where an irreconcilable conflict exists between the granting clause of a deed and subsequent clauses thereof, the granting clause will prevail. *Teague* v. *Sowder,* 121 Tenn., 132, 114 S. W., 484; *Ballard* v. *Farley,* 143 Tenn., 161, 226 S. W., 544; *Hicks* v. *Sprankle,* 149 Tenn., 310, 257 S. W., 1044. This rule has been frequently applied in cases where it was insisted that a grant of a particular estate or a particular quantity of land was restricted or cut down by a reference in the deed to other deeds. It has been rather generally held that a particular description of the property and estate conveyed, which is definite and certain, will control a general reference to another deed as the source of title. *Gaddes* v. *Pawtucket Institution, etc.,* 33 R. I., 177, 80 A., 415, Ann. Cas., 1913B, 407; *Lovejoy* v. *Lovett,* 124 Mass., 270; *Moran* v. *Somes,* 154 Mass., 200, 28 N. E., 152, and other cases collected in notes, Ann. Cas., 1913B, 418, and 8 L. R. A. (N. S.), 1038.

In *Jones* v. *Webster Woolen Co.,* 85 Me., 210, 27 A., 105, it was said of a deed there under consideration:

"No ambiguity is discoverable in the description contained in the deed. The boundaries seem to be complete in themselves. The reference is general, rather than particular, and was designed to identify locality, rather than to make more certain any limits or bounds in the deed. It would be a hazardous policy to allow a grantor to lessen the amount of land apparently conveyed by his deed by a general reference to some other deed or paper. Impositions could be easily practiced under such a rule, as grantees rarely pay much attention to such references, or know whether they affect their interests or not."

The Massachusetts case of *Lovejoy* v. *Lovett, supra,* was expressly approved by this court in *Sequatchie Land Co.* v. *Sewanee Coal, Coke & Land Co.,* 137 Tenn., 313, 193 S. W., 106, 108. Quoting from the Massachusetts case, this court said:

"In *Lovejoy* v. *Lovett,* 124 Mass., 270, after a description by metes and bounds appeared the words 'being the same premises conveyed to me by Ezra Holden, by deed dated May 7, 1829.' It was held that these words should not overcome the earlier words of grant; that the reference is made to the Holden deed, not for the purpose of describing the lot conveyed, but to show the grantor's chain of title."

*Sequatchie Land Co.* v. *Sewanee Coal, Coke & Land Company* itself is in point. The deed under consideration there conveyed "all right, title, claim and interest" of the grantor. Later the deed referred to the land conveyed as "being an undivided one-half interest" of the grantor. It was held that the whole title passed and the grant of the whole title was not cut down by the subsequent restrictive and contradictory phrase. The principle of that case and of this case is the same.

■■ Applying the fixed rule that a deed is construed most strongly against the grantor and the rule of *Teague* v. *Sowder, supra,* and the other cited cases, there is really no ambiguity in the description of the land in the deeds by Brown. Were there ambiguity, however, if the description is merely ambiguous or incomplete, "if it is apparent from the face of the record that there is a mistake or misdescription, which is capable of being corrected from other parts of the same instrument, or other details of the same description, it operates as a constructive notice." 41 C. J., 565. This text is fully supported by the authorities cited, partic-

ularly *Bent* v. *Coleman et al.,* 89 Ill., 364; *Scott* v. *Thomas,* 211 Ala., 420, 100 So., 778; *Carter* v. *Hawkins,* 62 Tex., 393.

In *Carter* v. *Hawkins, supra,* the Supreme Court of Texas said: "A purchaser examining a recorded instrument must look to all its parts and not content himself with so much as will by itself give him no notice, when the remainder contains statements which would put him upon further inquiry as to the title."

A registered deed imparts the same notice to a creditor as it imparts to a purchaser. Section 7668 of the Code only relieves a creditor from the effect of notice of an unregistered instrument.

We think Brown's deeds, to say the least of them, contain a sufficient description of the property intended to be conveyed to put a creditor upon inquiry and a slight inquiry would have disclosed that the property designed for inclusion in these deeds was the 929 acres.

We are referred by counsel to chapter 25 of the Acts of 1915, Code, sections 8085-8087, requiring instruments offered for registration to contain a recital designating the last registered instrument relating to the property embraced in the instrument to be registered, and setting forth the book and page where appears the last registered instrument. We do not see that this statute affects the rights of the parties hereto. It is expressly provided: "That a failure of the record to show a compliance with the requirements . . . shall in no wise affect the validity of the registration of any registered instrument." That is to say, the registration of an instrument has the same effect—conveys the same notice—that it did before the statute.

For the reasons stated, we think the decree of the chancellor should be affirmed.