In re Gary Krag McALLISTER & Paula Deana McAllister, d/b/a Cherokee Park Medical Center, Ringgold I., f/d/b/a Cleveland Racketball Club & Fitness Center, Debtors.

Gary Krag McALLISTER & Paula Deana McAllister, Plaintiffs,

v.

CHEROKEE VALLEY FEDERAL SAVINGS & LOAN ASSOCIATION, Glen Marsh Byers, Chalmer Chastain, Jr., First Tennessee Bank of Chattanooga, N.A., & the United States of America for the Use and Benefit of the Internal Revenue Service, Defendants.

Bankruptcy No. 1–83–00529.
Adv. No. 1–83–0586.

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 21, 1985.

Thomas E. Ray, Ray & North, Chattanooga, Tenn., for plaintiffs.

Robert W. Varnell, Jr., Cleveland, Tenn., for Cherokee Valley Federal Sav. Bank.

Brian C. Smith, Thomas, Mann & Gossett, Chattanooga, Tenn., for First Tennessee Bank.

Betsy E. Burke, U.S. Dept. of Justice, Tax Div., Washington, D.C., for the I.R.S.

James L. Golden, Leitner, Warner, Moffitt, Williams & Dooley, Chattanooga, Tenn., for defendants, Glen Byers & Chalmer Chastain, Jr.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The remaining dispute in this adversary proceeding is between First Tennessee

Bank (the Bank) and the Internal Revenue Service (the IRS).

The debtor, Gary McAllister, and the defendants, Byers and Chastain, owned an office building as partners, but the recorded deeds simply named them as grantees, which would make them tenants in common. The Bank acquired a security interest in McAllister's interest in the partnership, which was personal property, and perfected the security interest by filing a financing statement (UCC–1) with the Tennessee Secretary of State. The IRS acquired tax liens against McAllister and filed notices in the register's office. The IRS contends that even though McAllister, Byers, and Chastain owned the property as partners, it could rely on the recorded deeds showing them as tenants in common, and as a result, its tax liens are perfected against the building itself and come ahead of the Bank's security interest in McAllister's interest in the partnership. The Bank contends that the IRS could not rely on the recorded deeds as making McAllister a tenant in common because the real estate records when the IRS filed its notices also contained a memorandum of leases showing that McAllister, Byers, and Chastain owned the building as partners.

The facts in more detail are as follows.

McAllister acquired an interest in the building when it was conveyed to him and four other persons. They were partners, but the deed did not identify them as partners. The deed was recorded.

Two of the partners decided to withdraw. They conveyed their interest in the property to McAllister and the other remaining partners, the defendants Byers and Chastain. The quitclaim deed was recorded. It did not identify McAllister, Byers, and Chastain as partners.

McAllister, Byers, Chastain, and their wives executed a deed of trust of the property to secure a debt to Cherokee Valley Federal Savings and Loan Association. The deed of trust was recorded. The Bank and the IRS admit that the lien of the deed of trust is superior to their liens.

McAllister, Byers, and Chastain executed a new partnership agreement under which their interests in the building were contributed to the partnership. The new partnership was known as Cherokee Medical Center, apparently to distinguish it from the prior five member partnership that was known as Cherokee Medical Building. They did not execute a deed of the property to the partnership.

The partnership leased space to each of the partners. The leases were not recorded, but a "Memorandum of Leases and Assignments Thereof" was recorded.

The memorandum identifies the lessor as a partnership composed of McAllister, Byers and Chastain and known as Cherokee Medical Center. The leased premises are described as professional suites in Cherokee Medical Center, also known as Cherokee Medical Building. The memorandum then gives a legal description of the property where the building is located. The memorandum states that the leases were assigned to Cherokee Valley Federal Savings and Loan Association as security for the debt secured by the recorded deed of trust.

The memorandum itself was recorded and indexed in the name of the partnership and each partner, including McAllister.

The quitclaim deed from the withdrawing partners to McAllister, Byers, and Chastain, the new partnership agreement, and the deed of trust to Cherokee Valley Federal Savings and Loan Association, were executed within a period of a few days in April, 1976. The quitclaim deed and the deed of trust were recorded immediately.

The memorandum of leases appears to have been executed in June, 1976 and recorded in July, even though it is dated April 21, 1976.

In 1979 the Bank made a business loan to McAllister as sole stockholder in Cleveland Racketball Club, Inc. McAllister personally guaranteed the debt. As security for the debt, McAllister, Byers, and Chastain executed for the Bank's benefit an "option and put" agreement. The Bank filed a

financing statement (UCC–1) with the Tennessee Secretary of State showing that it had a security interest in McAllister's partnership interest in Cherokee Medical Center, a partnership composed of McAllister, Byers, and Chastain.

In 1981, and again in 1982, the IRS assessed unpaid income taxes against the debtor. It filed notices of tax liens in the register's office in January, 1983.

### Discussion

The parties do not seriously dispute that between Byers, McAllister, and Chastain the building was partnership property. The court concludes that it was.

Since the building was partnership property, McAllister by himself could not give the Bank a lien on the building to secure his personal debt. Tenn.Code Ann. § 61–1–124. He could deal with the building itself only for partnership purposes. Tenn.Code Ann. § 61–1–124. McAllister could, however, encumber his "interest in the partnership" to secure his personal debt to the Bank. Tenn.Code Ann. §§ 61–1–125 & 61–1–126. His interest in the partnership was his right to share in the profits and surplus and was personal property. Tenn.Code Ann. § 61–1–125. The Bank argues that the option and put agreement gave it a security interest in McAllister's interest in the partnership and that it perfected the security interest by filing the financing statement.

As a general rule, the IRS could not have acquired a lien on the building itself to secure McAllister's personal debt because the building was partnership property. Tenn.Code.Ann. § 61–1–124. The IRS, however, argues that it could rely on the recorded deeds as making McAllister a tenant in common, and so its lien attached to the building itself as if McAllister were in fact a tenant in common. *Collner v. Greig*, 137 Pa. 606, 20 A. 938 (1890); 60 Am.Jur.2d, Partnership § 91 (1972). The IRS's lien on the building itself would come

ahead of the Bank's lien on McAllister's interest in the partnership.

The IRS relies on the Tennessee statute that provides that an unrecorded deed is ineffective as to a creditor of the grantor or a bona fide purchaser from the grantor without notice. Tenn.Code Ann. § 66–26–103.

The argument is out of place on the facts of this case. The recorded deeds were sufficient to make the building partnership property between McAllister, Byers, and Chastain. Tenn.Code Ann. §§ 61–1–107 & 61–1–109; *Cultra v. Cultra*, 188 Tenn. 506, 221 S.W.2d 533 (1949); 60 Am.Jur.2d Partnership § 88 (1972). A deed from them to the partnership or to themselves as partners was not required to make the building partnership property. Apparently there was no such deed. The Bank is not relying on an unrecorded deed to the partnership. It is relying on the recorded memorandum of leases as revealing that McAllister, Byers, and Chastain owned the building as partners.

The IRS could argue that the memorandum of leases would only give notice of an unrecorded deed to the partnership, but this argument must also be rejected for the reasons already given.

The IRS must be held to knowledge that the recorded deeds were sufficient under Tennessee law to make the building property of McAllister, Byers, and Chastain as a partnership.

The memorandum of leases was record notice to the IRS that McAllister, Byers, and Chastain intended to own the building as partners. The memorandum of leases cannot be read any other way. Tenn.Code Ann. § 66–26–102; *Phoenix Mutual Life Ins. Co. v. Kingston Bank & Trust Co.*, 172 Tenn. 335, 112 S.W.2d 381 (1938); see also *Groves v. Witherspoon*, 399 F.Supp. 456 (E.D.Tenn.1975). The IRS could not rely on the recorded deeds as making McAllister a tenant in common rather than a tenant in partnership. Thus, the IRS did not acquire a lien on the building itself as specific partnership property to secure

McAllister's personal debt for unpaid taxes. Tenn.Code Ann. § 61–1–124(b)(3).

The result is that the IRS does not have a lien on the building itself that would come ahead of a previously perfected security interest in McAllister's interest in the partnership.

■ The IRS does have a tax lien on McAllister's interest in the partnership. It was perfected when the lien notices were filed. Tenn.Code Ann. §§ 61–1–127 & 66–21–201; *Howard v. United States*, 566 S.W.2d 521 (Tenn.1978); 35 Am.Jur.2d, Federal Tax Enforcement §§ 8 & 10 (1967). Thus, it appears that the Bank and the IRS each has a perfected lien on McAllister's interest in the partnership and that the Bank's lien has priority because perfected first. There is a problem with the priority conclusion because of the odd nature of the Bank's rights under the option and put agreement. The agreement created a security interest within the Uniform Commercial Code's definition of security interest. Tenn.Code Ann. § 47–1–201(37). But it did not give the Bank the right to dispose of McAllister's interest in the partnership by foreclosure under Article 9 of the Uniform Commercial Code. Tenn.Code Ann. § 47–9–501 et seq. It also was not a general assignment of McAllister's interest in the partnership. Tenn.Code Ann. § 61–1–126. The Bank's security interest apparently gave it only the right to sell McAllister's interest in the partnership to Byers or Chastain, without specifically giving it the right to share in the surplus or profits of the partnership other than by selling the partnership interest. Nevertheless, the bank took the correct steps to perfect its security interest. Tenn.Code Ann. §§ 47–9–106 & 47–9–301. And the Bank's security interest having been perfected first gives it the right ahead of the IRS's tax lien to sell McAllister's interest to Byers or Chastain under the option and put agreement.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.