**Amanda York BEATY and Nancie York Gunter, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 90–5265, 90–5372.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1990.

Decided June 26, 1991.

W. Morris Kizer, Mack A. Gentry, Mark P. Jendrek (argued), Gentry, Tipton, Kizer & Little, Knoxville, Tenn., for plaintiffs-appellants.

Gary R. Allen, Acting Chief, David I. Pincus, William S. Estabrook (argued), Rosemary Schrauth, U.S. Dept. of Justice, Appellate Section Tax Div., William D.M. Holmes, U.S. Dept. of Justice, Tax Div., Washington, D.C., John W. Gill, Jr., U.S. Atty., Office of the U.S. Atty., Chattanooga, Tenn., for defendant-appellee.

Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

The plaintiffs, Amanda York Beaty and Nancie York Gunter, sued the Internal Revenue Service for wrongful levy. Soon after filing suit against the IRS, the plaintiffs moved for summary judgment. The district court denied their motion and entered summary judgment for the IRS, *sua sponte*. We reverse.

## I

There are no material factual disputes in this case. The only disagreement between the parties concerns the legal import of the undisputed facts. The plaintiffs, who are sisters, now own three plots of land levied upon by the IRS. They came to own the land by a rather convoluted series of transactions. The plaintiffs' father, Goldman D. York, died intestate on October 4, 1978. Goldman D. York was survived by his wife and four children, including the plaintiffs in this action. The Goldman D. York estate filed a United States Estate Tax Return, Form 706. After auditing the estate, the IRS entered into a binding closing agreement pursuant to 26 U.S.C. § 7121. At that time, the IRS agreed that Goldman York, who was engaged in a partnership with two of his sons, owned 55.7% of the partnership. A portion of that partnership was transferred, after probate, to Zola B. York, Goldman's widow. Zola York died in July 1982. At the time of her death, Zola York's estate owned ⅙ (about 16.7%) of the partnership. Her estate swapped the interest in the partnership for some partnership assets, including the parcels of land at issue in this case. Those assets, including the parcels of land, were distributed to the plaintiffs.

The IRS believes (correctly, but that's beside the point) that the Goldman York estate did not pay enough taxes. Consequently, on September 26, 1988, over nine years after the death of Goldman, the IRS levied upon and seized the three parcels of land. The IRS claims to have a tax lien against the property in question. The plaintiffs attempted to resolve the dispute administratively with the IRS but were not able to do so. In May 1989, the IRS issued a "Notice of Public Auction and Sale." In order to prevent the sale, the plaintiffs filed the instant action for wrongful levy against the IRS. The question presented on appeal is whether the IRS has a valid lien against the property.

## II

26 U.S.C. § 6324(a)(1) provides that, if the estate tax is not paid (or otherwise discharged by the passage of time) "it shall be a lien upon the gross estate of the decedent for 10 years from the date of death...." The special estate tax lien differs from the § 6321 general tax lien in two important respects. In one respect, the estate tax lien is stronger than the general tax lien. Under 26 U.S.C. § 6323(a), the general tax lien is not good against bona fide purchasers or other interest-holders unless the government perfects its interest by filing in the manner prescribed by 26 U.S.C. § 6323(f). The estate tax lien, by contrast, attaches to the property by operation of law and does not require filing to be good against innocent third parties. The estate tax lien is, however, weaker in that it lasts for ten years, while the general tax lien has no set duration—it lasts until the underlying tax is either paid or becomes unenforceable by lapse of time. 26 U.S.C. § 6322.

The plaintiffs filed their motion for summary judgment on September 26, 1989. They argued that the land was not subject to the estate tax lien since it, as partnership property, was not a part of Goldman's gross estate and therefore not subject to the estate tax lien. Claiming that the issues involved in the case were particularly complex, the IRS asked for extra time to file its response. The court granted the IRS's motion, giving it until October 31, 1989 to file a response. The IRS filed its response on November 7, 1989. At that time, it finally filed a cryptic five-page memorandum "responding" to the plaintiffs' arguments.

The IRS clearly took the position that the government had a lien on the property by virtue of the fact that the property had been owned, in some fashion, by the Goldman York estate. The legal basis for this position is not clear, but we read the IRS position below as being that the three parcels of land were a part of the Goldman York gross estate by virtue of the fact that they were owned by a partnership in which he had an interest. This accords with the plaintiffs' reading as well. The IRS has wisely chosen to abandon this position on appeal, since, under the governing

Tennessee rule of law, partnership property cannot be used to satisfy the debts of the individual partners. *See United States v. Worley*, 213 F.2d 509, 512 (6th Cir.1954); *McAllister v. Cherokee Valley Federal Savings & Loan Association*, 52 B.R. 293, 295 (Bkrtcy.E.D.Tenn.1985). So, as an original matter, the IRS had a lien against the partnership interest itself, but not against the three parcels of land that were owned by the partnership. The problem that the IRS ducked below is that the Zola York estate swapped its interest in the partnership (on which the government had a lien) for partnership property (which was held by the partnership and was therefore not subject to the lien). The question, then, is whether the lien transferred itself to the property received in return for the partnership interest.

■ The district court relied on 26 U.S.C. § 6324(a)(2) to hold that the government had a lien on the proceeds. The detailed workings of § 6324(a)(2) are not important to this case. Suffice it to say that that section provides that, in certain cases, innocent transferees of various types of property subject to an estate tax lien get that property free of the lien, and the lien attaches instead to the property of the transferor. If it applied, § 6324(a)(2) would make this an easy case. It doesn't apply.

Section 6324(a)(2) gives the government a lien for unpaid estate taxes over property held by transferees of property "included in the gross estate under sections 2034 to 2042, inclusive...." Those sections govern various forms of nonprobate property that is subject to estate tax despite the fact that it need not pass through probate. *See* 26 U.S.C. § 2034 (dower or curtesy interests); 26 U.S.C. § 2035 (gifts made within three years of death); 26 U.S.C. § 2036 (transfers with a retained life estate); 26 U.S.C. § 2037 (transfers that take effect at death); 26 U.S.C. § 2038 (revocable transfers); 26 U.S.C. § 2039 (annuities); 26 U.S.C. § 2040 (joint interests); 26 U.S.C. § 2041 (powers of appointment); 26 U.S.C. § 2042 (proceeds from life insurance). In this case, the partnership interest to which the lien was attached does not even argu-

ably fall within any of the types of property governed by §§ 2034–42, but is, rather, governed by 26 U.S.C. § 2033, which applies to probate property. Accordingly, the provisions of 26 U.S.C. § 6324(a)(2) simply do not apply.

We note in passing that the district court entered summary judgment *sua sponte* on grounds not urged on him by either party, without informing the adversely affected parties of his intent to do so, a practice that we discourage. *See Routman v. Automatic Data Processing*, 873 F.2d 970, 971 (6th Cir.1989) ("[B]efore summary judgment may be granted against a party, Fed.R. Civ.P. 56(c) mandates that the party opposing summary judgment be afforded notice and a reasonable opportunity to respond to all issues to be considered by the court."). One reason for this rule is that it makes it less likely for the district court to make errors such as this (though we doubt that it would have mattered in this case, since the plaintiffs pointed out the error in their motion for reconsideration, which was denied).

### III

■ On appeal, the IRS relies neither on the position that it took below or on the analysis of the district court, which it concedes was incorrect. It has, instead, created a new theory in support of its claim that it has a lien on the three parcels of land. Normally, we will not consider claims not properly raised below. *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987). In this case, however, we choose to decide the fully-briefed issue. Though the IRS should not have shifted positions, we are less inclined to blame it for not fully developing its argument, since the district court dismissed *sua sponte*. Given the fact that the IRS was never given the opportunity to make its argument below, a remand would normally be the appropriate remedy once we had determined that the court's initial decision was in error. Here, the record is complete, and it would be a waste of everyone's time to remand to the district court what can be decided now as a matter of law.

The IRS's argument begins with the proposition that the government had a valid lien against Zola York's interest in the partnership. According to the IRS, when the Zola York estate exchanged the encumbered partnership interest for the land, "the lien that had been on the partnership interest (but which was displaced by virtue of the transfer of that interest to the partnership) attached to those three parcels."

■ It is certainly true that when a tax lien is displaced by a transfer, a lien on the proceeds of the transfer does result. *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). In *Phelps*, a § 6321 general tax lien case, the lien no longer encumbered the original property, since that property had passed to a good faith purchaser. *Id.* at 334 n. 4, 95 S.Ct. at 1731 n. 4. What distinguishes *Phelps* from this case, however, is the fact that a § 6324(a)(1) estate tax lien, unlike the general tax lien at issue in *Phelps*, is good even against good-faith bona fide purchasers. *Detroit Bank v. United States*, 317 U.S. 329, 335, 63 S.Ct. 297, 300, 87 L.Ed. 304 (1943); *United States v. Vohland*, 675 F.2d 1071, 1074 (9th Cir.1982); Rev.Rul. 69–23, 1969–1 C.B. 302. Thus, unlike in *Phelps*, the original estate tax lien at issue here remained good against the partnership interest itself. If a lien is not destroyed by operation of a transfer, the lien never becomes attached to the proceeds of the exchange. *See Kimbell Foods, Inc. v. Republic National Bank of Dallas*, 401 F.Supp. 316, 327 (N.D.Tex. 1975); 51 Am.Jur.2d Liens § 60 (1970). Accordingly, we hold that the lien never attached to the three parcels of property at issue here.

Our conclusion is bolstered by the structure of the statutory scheme. We have already noted that § 6324(a)(2) contains a specific provision that divests transferred property of its lien and attaches a lien to all of the property of the transferor. That provision applies only to a specific class of estate liens. Accordingly, by negative implication, we conclude that a lien does not attach to the proceeds of the other types of property subject to a § 6324(a)(1) estate tax

lien but not subject to the special provisions of § 6324(a)(2). The IRS has offered us no argument for adopting any other rule. Resolution of this issue is dispositive in the plaintiffs' favor. We therefore remand to the district court with the instruction that the court grant the plaintiffs' motion for summary judgment.

Since we find that the lien never attached to the land, we need not resolve the issue of whether the ten-year time limit is tolled by virtue of the execution of a levy or requires all collection activities to be complete within ten years. *Compare United States v. Potemken*, 841 F.2d 97 (4th Cir. 1988) (collection activities must be complete before expiration of ten-year period or lien lapses) *and United States v. Cleavenger*, 517 F.2d 230 (7th Cir.1975) (same) *with United States v. Saleh*, 514 F.Supp. 8, 11 (D.N.J.1980) (valid levy tolls running of ten-year limitation period).

## IV

■ The plaintiffs also argue that they are entitled to attorney's fees under 26 U.S.C. §§ 7430, 7432, & 7433. These sections allow taxpayers to collect fees from the IRS under certain circumstances. Section 7430 provides that "[i]n any ... court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest or penalty under this title, the prevailing party may be awarded a judgment for ... reasonable litigation costs incurred in connection with such court proceeding." Sections 7432 and 7433 apply to failures to release a lien and unauthorized collection activities, respectively. These provisions are not automatic, however; they are limited by a whole host of conditions and requirements. We will remand to the district court for consideration of whether the plaintiffs satisfy the requirements of those provisions.

We do hold, however, that, as a matter of law, the IRS position in the course of this litigation "was not substantially justified." 26 U.S.C. § 7430(c)(4)(A)(i). The litigation position of the IRS was objectively unreasonable. None of the arguments offered

by the IRS during the various stages of the litigation had even a chance of succeeding. More importantly, the IRS took a completely different position before this court than it took below. The IRS then tried to present a completely new position at oral argument. The IRS's constantly shifting positions reveal a "litigate now, think later" mentality. The time for the IRS to think through its legal position was before it took enforcement action against the plaintiffs' property, not during the course of litigation.

One final note. After entering summary judgment and after a notice of appeal had already been filed, the district court granted the IRS's motion to supplement the record on appeal with materials never considered by that court. The IRS now concedes that doing so was improper. Although the materials added to the record on appeal were irrelevant to the disposition of the case, we nonetheless mention the matter in order to comment on the district court's rationale. In its order, the court stated that "[s]ince the action is likely to be appealed, and the documents serve to bolster the government's position in this case, this motion is hereby GRANTED." This statement exhibits a certain confusion regarding the proper role of a judge. A central tenet of our republic—a characteristic that separates us from totalitarian regimes throughout the world—is that the government and private citizens resolve disputes on an equal playing field in the courts. When citizens face the government in the federal courts, the job of the judge is to apply the law, not to bolster the government's case.

### V

The judgment of the United States District Court for the Eastern District of Tennessee is REVERSED. The case is REMANDED to the district court for further proceedings. The court is instructed to enter summary judgment in favor of the plaintiffs and to resolve the claim for fees against the IRS in light of this opinion.