**In re GOCO REALTY FUND I, a California limited partnership, fka Glenborough Operating Co., Ltd., a California limited partnership, Debtor.**

**Bankruptcy No. 92–5–3651–MM.**

United States Bankruptcy Court, N.D. California.

Feb. 22, 1993.

James L. Lopes, Janet A. Nexon, San Francisco, CA, for Howard, Rice, Nemerovski, Canady, Robertson & Falk.

Carl Anderson, Gary F. Torrell, Los Angeles, CA, for secured creditor, New West Federal Sav. & Loan Ass'n, and moving party.

John J. Bartko, John S. Lottier, San Francisco, CA, for Bartko, Tarrant & Miller.

David B. Draper, Redwood City, CA, for Ropers, Majeski, Kohn, Bentley, Wagner & Kane.

## OPINION

MARILYN MORGAN, Bankruptcy Judge.

### I. INTRODUCTION

The debtor, GOCO Realty Fund I ("GOCO"), a California Limited Partnership, paid its attorneys in excess of $725,000 prior to filing the bankruptcy petition. Of this sum, more than $500,000 was paid as a retainer for a suit against its only secured creditor, New West Federal Savings & Loan Association ("New West").

New West moved for the return of the pre-petition legal retainers arguing that to permit GOCO to pay its counsel from cash subject to New West's lien compels New West involuntarily to fund litigation against its interest. GOCO responds that it may use the pre-petition income from its properties at its discretion.

In support of its position, New West asserts that, based on deeds of trust and absolute assignments of rents, it has a perfected security interest in the funds which were transferred as retainers; alternatively, New West asserts that the funds are cash collateral because the estate retains an interest in retainers paid to counsel and, therefore, New West is entitled to adequate protection. The motion is denied because New West failed to enforce its interest prior to the transfer.

### II. FACTS

GOCO is the successor to a group of limited partnerships that originated around 1982 in connection with a real estate investment program financed by American Savings and Loan Association ("ASLA"), formerly known as State Savings and Loan Association. The loans to the partnerships were restructured in 1986 when GOCO was formed, and again in 1987 when they were combined into one loan in the principal amount of $295,617,449. New West purchased ASLA's assets in 1988.

The loan is secured by deeds of trust and assignments of rents on 32 commercial properties in GOCO's portfolio located in California, Colorado, Illinois, Kansas, Maryland, Oregon, and Tennessee. Twenty of the properties are located in California. New West submitted the debtor's operating reports as evidence reflecting that 82.8% of the income from the properties was derived from the California properties.[1]

The California deeds of trust and assignments of rents provide:

---

**1.** New West has limited its argument to California law although twelve of the properties are located in other states.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to a default by Borrower hereunder, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents so collected to the sums due under the Note ... so long as no such Default has occurred, to the account of Borrower, it being intended ... that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon default by Borrower hereunder, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property ... as the same become due and payable....

The security instruments were properly recorded.

GOCO defaulted on the loan in April 1992. New West recorded notices of default on April 28 and May 12, 1992. However, New West offered no evidence of any demand upon GOCO for the turnover of rents.

During April and May 1992, GOCO paid to its attorneys, Bartko, Tarrant & Miller ("Bartko, Tarrant") and Howard, Rice, Nemerovski, Canady, Robertson & Falk ("Howard, Rice") (collectively, the "Law Firms"), retainers in the amounts of $500,065 and $100,000, respectively, from its general operating account into which income from rents and other sources is deposited. The Law Firms deposited the retainers into their respective client trust accounts.

The Bartko, Tarrant retention letter provides:

This retainer is considered an advance payment toward fees and costs incurred pursuant to this Agreement. The retainer shall be deposited into a special client trust account. Funds from this account may be disbursed by the Firm to satisfy all or any portion of any or all periodic billing statements sent to Client....

The Howard, Rice retention letter and attachment thereto provide:

In light of the potential bankruptcy filing, we have asked for a retainer of $100,000. If a bankruptcy is filed, all our fees are subject to bankruptcy court review and approval....

Our firm's billings are based primarily on how much time is spent on your matter and by whom it is spent.

GOCO also paid retainers to Wilson, Sonsini, Goodrich & Rosati ("Wilson, Sonsini") and Ropers, Majeski, Kohn, Bentley, Wagner & Kane ("Ropers, Majeski") in the amounts of $100,000 and $25,000, respectively. These firms were originally the subject of New West's motion as well. However, upon learning that Wilson, Sonsini has since completed its work and refunded approximately $80,000 to the debtor-in-possession and that Ropers, Majeski's work conferred a benefit upon New West, the motion has been withdrawn with respect to these firms. New West, however, still asserts an interest in the funds returned to GOCO by Wilson, Sonsini.

On May 21, 1992, New West filed a complaint against GOCO in the Superior Court of the State of California for Orange County for sequestration of rents and judicial foreclosure of all assets securing the loan, among other claims. Later that same day, GOCO filed a complaint against New West in the Superior Court of the State of California for San Mateo County, asserting in various causes of action that New West and GOCO are joint venturers rather than a traditional lender and borrower. Still later the same day, GOCO filed its chapter 11 petition.

## III. ISSUES

The issues before the Court are whether a secured creditor's interest in rents continues after the trustor transfers the proceeds from rents to an attorney as a retainer and, if it does, whether that interest prevails over counsel's interest in the retainer.

## IV. ANALYSIS

### A. Enforcement of Conditional Absolute Assignments of Rents Under California Law.

1. *Interpretation of California Civil Code § 2938 commences with the plain meaning of the statute.*

■ New West's interest in the rents arises pursuant to the assignments of rents.[2] Under California law,[3] a trustor may grant as security an assignment of rents from property that is the collateral for a debt, which may be an absolute assignment, a conditional absolute assignment, or a collateral assignment for additional security.[4] *See generally* Roger Bernhardt, *California Mortgage and Deed of Trust Practice* §§ 5.10–5.11 (2d ed. 1990 & Supp.1992). The assignments given by GOCO to New West are conditional absolute assignments of rents.

Conditional absolute assignments of rents are governed by California Civil Code (hereinafter "Cal.Civ.Code") § 2938, added in 1991. Any analysis of Cal.Civ.Code § 2938 commences with the plain words of the statute:

(a) A written assignment of interest in rents, issues, and profits of real property made in connection with a loan secured by real property, stating that it is absolute, shall be deemed to constitute a present transfer of the assignor's interest in existing and future rents, issues, and profits of that real property effective upon the execution and delivery of the assignment by the assignor.

(b) An assignment of an interest in rents, issues, and profits of real property, ... may be recorded in the records of the county recorder in which the real property is located in the same manner as any other conveyance of an interest in real property, ... and when so duly recorded ... (1) the assignment shall be deemed to give constructive notice of the content and effect of the assignment with the same force and effect as any other duly recorded conveyance of an interest in real property, and (2) the interest granted by the assignment shall be deemed perfected as of the date of recordation, notwithstanding any provision of the assignment or of any other provision of law that would otherwise preclude or defer enforcement of the rights granted the assignee under the assignment until the occurrence of a subsequent event, including, but not limited to, a subsequent default of the assignor.

Cal.Civ.Code § 2938 (West 1974 & Supp. 1993).

---

2. From the origins of common law, "rent" is an incident of real property ownership. The general rule is that the right to possession of mortgaged property coincides with the right to resulting rents and profits. 59 C.J.S. § 316 (1949 & Supp.1992). Fundamentally, a trust deed arises out of a loan transaction. If the loan is repaid, the trust deed becomes null and void. "The nature of [a trust deed] has been extensively discussed by this court, and the sum and substance of such discussion is that while all legal title passes thereunder, and the trustees cannot be held to hold a mere lien on the property, it is practically and substantially only a mortgage, with power of sale." *MacLeod v. Moran,* 153 Cal. 97, 100, 94 P. 604 (1908). If the loan is not repaid, the deed of trust gives the lender rights against the property. The borrower may assign the right to receive lease payments from the property to the lender as additional security for a loan.

3. The nature of a secured party's interest in property is determined by reference to state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141–42 (1979).

4. An absolute assignment requires collection of rents by the lender rather than the borrower. A conditional absolute assignment, sometimes referred to as an absolute assignment conditional on default, provides the lender with access to rents only after default.

A collateral assignment for additional security gives the lender a lien on rents in addition to the lien against the property. However, it requires actual possession by the lender or an appointed receiver prior to collection of rents.

■ The import of the enactment of Cal.Civ.Code § 2938 is to clarify that a conditional absolute assignment of rents is properly perfected on recordation, constituting a present transfer of the assignor's interest in existing and future rents. The language of the written assignment controls over the parties' intent and determines the characterization of the assignment of rents. Cal.Civ.Code § 2938(a). The statute further provides that recordation gives constructive notice of the lender's interest to third parties and that perfection occurs as of the date of recordation, "notwithstanding any provision ... that would otherwise preclude or defer *enforcement* of the rights granted the assignee...." Cal.Civ.Code § 2938(b) (emphasis added).

■ The literal words of the statute plainly anticipate an *enforcement* step by a lender who holds legal title to rents arising from a perfected conditional absolute assignment of rents before the lender is entitled to possession. The statute also provides for constructive notice to third parties of a lender's superior interest in rents. However, the language of the statute leaves ambiguous the question of entitlement to rents after perfection but before enforcement of the assignment.

■ Although the committee note to Cal. Civ.Code § 2938 states that it is declaratory of existing law, the new section was apparently intended to strengthen real estate lenders' claims to rents in bankruptcy. Bernhardt, *supra* § 5.10. The legislature could have adopted the common law rule requiring the lender to perfect its interest in rents following default; or, it could have focused on the intent of the parties that the right to rents passes automatically upon default. Instead, the legislature codified the holding from *Ventura–Louise* that the effect of a conditional absolute assignment is to transfer title to rents to the lender. *In re Ventura–Louise*, 490 F.2d 1141 (9th Cir.1974) (applying California law).[5]

## 2. *Significance of the Holding of Ventura–Louise.*

In *Ventura–Louise*, the assignment of rents authorized the lender to "enter into and upon and take and hold possession of any or all property covered hereby and exclude the [t]rustor and all other persons therefrom ..." in the event of default without further notice or demand to the borrower. *Id.* at 1143. The assignment further provided that the rents were "assigned and transferred for the benefit and protection of the [b]eneficiary...." *Id.* (italics omitted). The holding of *Ventura–Louise* is significant because it construes an absolute assignment of rents as a transfer of title. The construction that title to rents is transferred has been interpreted to obviate the need for a further perfection step by the lender before the lender is entitled to collect rents. *Ventura–Louise* broke from the traditional view which held that

> mere words of assignment of future rents can [not] entitle a mortgagee to claim rentals which have been collected by a mortgagor and mingled with its other property. Sound policy as well as every probable intention should prevent a mortgagee from interfering with the mortgagor's [control]. To hold otherwise would be to impose unworkable restrictions upon industry in cases where mortgagors have been led to suppose that they might rightfully apply the rentals to their own business.

*Prudential Ins. Co. of America v. Liberdar Holding Corp.*, 74 F.2d 50 (2d Cir. 1934). *See also In re Federal Shopping Way, Inc.*, 457 F.2d 176 (9th Cir.1972). The traditional view reflects the economic reality that a borrower customarily has a window of opportunity after default within which to conduct informal negotiations with a lender.

Critics of *Ventura–Louise* urge its reversal because it is not based in common

---

**5.** Although *Ventura–Louise* construed the effect of an absolute assignment of rents to be a transfer of title, such an interpretation is contrary to the common law concept that a trust deed conveys merely a lien. See the discussion of *MacLeod v. Moran infra* at fn. 2. It may be significant that the statute refers to the transfer of an "interest" rather than the transfer of title.

law real property principles and does not accurately reflect a borrower's expectations. Patrick A. Randolph, Jr., *Recognizing Lenders' Rents Interests in Bankruptcy*, 27 Real Prop.Prob. & Tr.J. 281, 289–303 ("Hybrid rents interest, . . . ineffective until default and only available to satisfy the debt," is a legal fiction created to strengthen lenders' rights in bankruptcy.); James McCafferty, *The Assignment of Rents in the Crucible of Bankruptcy*, 94 Com.L.J. 433, 442–45, 476–77 (1989) (Any "lien theory" approach could conclude that a creditor's rights to the rents or the property is determined by possession.). *See also FDIC v. Int'l Prop. Mgmt.*, 929 F.2d 1033, 1035 (5th Cir.1991) ("lack of any theoretical underpinnings"). Concerns about the practicality of the *Ventura–Louise* approach and the lack of uniformity nationwide have led to proposals to modify the Restatement of the Law of Property— Security (Mortgages) to provide in § 4.2 of the Restatement that "after any preconditions to seizure of the rents such as default . . . the lender's right to possess the rents arises only upon notice of demand" to the borrower. Randolph, *supra* at 330.

 The holding of *Ventura– Louise* is limited to *perfection* of a security interest in rents. A close reading discloses that *Ventura–Louise* does not address *enforcement* of that interest. The facts of *Ventura–Louise* indicate that the lender had taken an enforcement step by making a demand. 490 F.2d at 1142. Failure properly to distinguish between concepts of perfection and enforcement of an assignment of rents has led to confusion between the terms "perfected" and "choate." *In re Park at Dash Point, L.P.*, 121 B.R. 850 (Bankr.W.D.Wa.1990), *aff'd on other grounds*, 985 F.2d 1008 (9th Cir.1993). The distinction is that perfection provides a security interest with protection against an intervening third party. In contrast, enforcement of an assignment of rents gives the lender the actual right to collect the rents, causing the lender's interest to become "choate." *Dash Point*, 121 B.R. at 855. Until the point in time that the interest becomes "choate," the borrower is entitled to possession of any rents paid. *Id.*

### 3. *A Demand is Required to Enforce A Conditional Absolute Assignment of Rents.*

 *Ventura–Louise* is consistent with the requirement of an enforcement step. Additionally, California law holds that even when an assignment is absolute, an affirmative enforcement step in addition to perfection is a prerequisite to the lender's possession of the rents, and that the lender is entitled to all the rents, issues, and profits *from the time of demand* upon the defaulting borrower to deliver possession and pay over the rents. *See In re Charles D. Stapp of Nevada, Inc.*, 641 F.2d 737, 740 (9th Cir.1981) (analogizing California law in interpreting a Nevada statute); *Mortgage Guarantee Co. v. Sampsell*, 51 Cal.App.2d 180, 189–90, 124 P.2d 353, 358 (1942); *Title Guarantee & Trust Co. v. Monson*, 11 Cal.2d 621, 625, 81 P.2d 944, 947 (1938); *Bank of America v. Bank of Amador County*, 135 Cal.App. 714, 721, 28 P.2d 86 (1933). *See also* 4 Miller & Starr, *Current Law of California Real Estate* § 9:46 (2d ed. 1989); Judge & Weiner, *supra*, § 5.10 (2d ed. 1990 & Supp. 1992); 3 Witkin, *Summary of California Law*, Secured Transactions in Real Property § 88 (9th ed. 1987 & Supp.1992). In each of the cases cited, the issue was whether the lender or the borrower was entitled to the rents that accrued after the borrower's default. These authorities make clear that upon default, enforcement brings an inchoate interest to fruition and the lender acquires priority in rents arising only after enforcement. Any other interpretation will only lead to confusion in the market place by leaving open to question entitlement to monies commingled or transferred to third parties.

 No California court has interpreted an absolute assignment of rents to be self-executing with respect to enforcement upon default by the borrower. Thus, a lender's right to possession of rents arises only upon both the borrower's default *and* the lender's demand for possession. Although Cal.Civ.Code § 2938 may obviate the need for a further perfection step, it cannot be read to obviate the need for a further enforcement step.

### 4. *New West never timely enforced its interest.*

 The problem of determining conflicting interests in rents is not new.[6] The California Supreme Court reviewed similar facts in *Bank of Woodland v. Heron*, 120 Cal. 614, 52 P. 1006 (1898). In *Heron*, a mortgagee sought to foreclose and on February 1, 1896, the trial court appointed a receiver to take possession of the premises and receive the rents. The receiver demanded that the tenant turn over rents on March 14, 1896. However, one week earlier, the borrower sold and assigned to her attorney all her interest in the rents. In a dispute between the mortgagee and the attorney over rights to the rents, the trial court found that the attorney's interest prevailed, and the California Supreme Court affirmed. The Court noted that "[t]here is nothing important in the fact that the assignee was an attorney of Mrs. Heron; she had the right to dispose of the property that was not within the mortgage lien to whomsoever and in whatever manner she pleased." *Id.* at 620, 52 P. 1006. The Court quoted from Jones on Mortgages for the principle:

> Even if the rents and profits of the mortgaged property are expressly pledged for the security of the mortgage debt, with the right to take possession upon default, the mortgagee is not entitled to the rents and profits until he takes possession, or until possession is taken in his behalf by a receiver.

*Heron*, 120 Cal. at 617–18, 52 P. 1006. Distinguishing the *Heron* facts from situations where "the complainants have estates or interests in the property, or liens thereon, independent of and not created by the receivership, and the receiver is appointed to preserve and enforce their pre-existing rights," the Court held that where a lender has a pre-existing right to the rents, the appointment of a receiver is a necessary enforcement step to the lender's entitlement to rents. However, where there was no pre-existing interest in rents, a subsequent enforcement step was necessary after the appointment of a receiver. Clearly, the Court determined that entitlement to rents requires a two-step process, both a perfection step and an enforcement step.[7] The result under *Heron* is that a third party acquires priority in rents against a lender that has not enforced its interest.

 Applying this reasoning, Cal.Civ. Code § 2938 addresses only the perfection step, although it clearly contemplates a separate enforcement step. The question remains whether actual or constructive notice to GOCO's attorneys of the pre-existing lien has any effect. However, constructive notice of a perfected interest is not sufficient if the lender has not sought to enforce its interest. *See, e.g., Bank of America v. Bank of Amador County*, 135 Cal.App. 714, 28 P.2d 86 (1933).

 The interest that New West had in pre-petition rents, although properly perfected, was inchoate at the time GOCO paid the retainers to the Law Firms; therefore, New West was not entitled to actual possession of the rents at that time. There is

---

**6.** The rents issue has plagued the courts for the last century. In determining rights rooted in the common law, it is relevant for a court to review the underlying principles established in historical case law addressing the same issue. The United States Supreme Court has exhaustively reviewed the historical bases for well-established rights, such as the right to jury trial, the doctrine of sovereign immunity, and the guarantee against double jeopardy, in interpreting the contemporary analogue of common law rights. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). For this reason, the court looks to the principles of rights to rents as established in California common law in order to interpret Cal.Civ.Code § 2938. However, the court notes that the terminology used in historical cases has evolved over time.

**7.** A 1941 commentary summarizing rents after default acknowledges that the enforcement step is consistently required by the laws of the various states, recognizing that "[t]he requisite action may consist of physical entry into possession and actual collection of rents, formal demand upon the mortgagor for possession and rejection, or securing the appointment of a receiver." Note, *The Mortgagee's Right to Rents After Default*, 50 Yale L.J. 1424, 1427–28 (1941). (footnotes omitted).

no evidence that New West ever made a demand for the rents prior to May 21, 1992. Because New West had taken no action to enforce its security interest prior to May 21, 1992, New West did not have the right to actual possession of the rents collected by GOCO and transferred prior to New West's enforcement.

 Even if New West had successfully established that it was entitled to the rents before GOCO paid the retainers to the Law Firms, it nonetheless cannot prevail because it failed to meet its burden of tracing the proceeds.[8] Declarations state that GOCO's rental income was commingled in an operating account pre-petition with income from other sources. New West has neither identified the other sources of income nor accounted for the amounts deposited into GOCO's pre-petition operating account along with rental income.

### B. A Security Retainer is Property of the Estate Subject to the Attorney's Possessory Security Interest.

#### 1. *Treatment of Retainers Is Determined By State Law.*

New West argues that the Law Firms' retainers are property of the bankruptcy estate because the client maintains an interest in a retainer paid to its counsel. On this theory, New West argues that the funds are cash collateral subject to New West's right to adequate protection under 11 U.S.C. § 363 and perfection of a security interest in rents continues post-petition under 11 U.S.C. § 552(b).

There is no dispute that rents generated post-petition from the properties are cash collateral and that New West is entitled to adequate protection for their use. *In re Tucson Industrial Partners*, 129 B.R. 614, 625 (Bankr. 9th Cir.1991).[9] However, the issue not addressed by *Tucson Industrial Partners* is the extent to which the same principles apply to the pre-petition retainers held by the Law Firms from rents generated pre-petition.

 The analysis in *In re McDonald Bros. Const., Inc.*, 114 B.R. 989 (Bankr. N.D.Ill.1990), is persuasive that a pre-petition retainer becomes property of the estate only if, under applicable state law, the debtor has an interest in the retainer at the time of filing the bankruptcy case.[10] A fee agreement in the bankruptcy context generally makes provision for a retainer. Emerging case law identifies several types

---

**8.** Although an assignment of rents is outside the scope of the U.C.C., the proceeds of the rents are cash, which would be personal property governed by the U.C.C. Reference to the continuity of security interests upon transfer under the U.C.C. may be helpful in considering the issue of tracing the proceeds of an assignment of rents.

Under the U.C.C., a security interest that extends to both existing and after-acquired collateral that changes or "turns over," such as inventory or accounts receivable, is a "floating lien." 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 25–6 (3d Ed. West 1988). A security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party. U.C.C. § 9–306(2). It also continues in any identifiable proceeds of the collateral. *Id.* A secured creditor's ability to trace and identify a fund as its property controls its entitlement to recover that fund. White & Summers, *supra* § 25–10.

**9.** In *Tucson Industrial Partners*, the Bankruptcy Appellate Panel for the Ninth Circuit held that if

the secured party's interest is properly perfected, rents become cash collateral upon the filing of a bankruptcy petition and are subject to automatic sequestration for the benefit of the secured party notwithstanding that the secured party had not taken action toward enforcement and held only an inchoate interest. 129 B.R. at 625. Other courts have reached the same result. *See, e.g., In re Vienna Park Properties*, 976 F.2d 106, 112 (2d Cir.1992); *In re Coventry Commons Associates*, 143 B.R. 837 (E.D.Mich.1992); *In re Brandon Associates*, 128 B.R. 729 (W.D.Va. 1991); *In re Constable Plaza Associates, L.P.*, 125 B.R. 98 (S.D.N.Y.1991); *New York Life Insurance Co. v. Bremer Towers*, 714 F.Supp. 414, 418 (D.Minn.1989); *In re Pavilion Place Associates*, 89 B.R. 36, 39 (Bankr.D.Minn.1988).

**10.** Applying the principles recognized from *Butner v. United States*, "the determination of property rights in the assets [is left] to state law." 440 U.S. at 54 n. 9, 99 S.Ct. at 918 n. 9, 59 L.Ed.2d at 141 n. 9. *McDonald* discredits the position taken by other courts that legal retainers are always property of the estate without reference to state law. *Cf. In re Hathaway*

**251**

of retainers, which include a "classic" retainer, an "advance payment" retainer, and a "security" retainer.[11] *See, e.g., McDonald Bros.,* 114 B.R. 989. *See generally* 7 Am.Jur.2d *Attorney at Law* §§ 245–253 (1980); 7A C.J.S. *Attorney and Client* §§ 280–312 (1980). The types of retainers employed in the agreements between GOCO and the Law Firms appear to be either security or advance payment retainers.

In California, unless otherwise provided by statute, compensation of attorneys is enforced according to the agreement between the parties.[12] Applying California law, there may be no difference in treatment of a security retainer and an advance payment retainer. Unearned fees in an attorney's possession must be available for refund to the client. *See Read v. State Bar of California,* 53 Cal.3d 394, 420, 807 P.2d 1047, 1058, 279 Cal.Rptr. 818, 829 (1991). Rule 4–100(A) of the Rules of Professional Conduct of the State Bar of California, effective May 1989 (formerly Rule 8–101), mandates that an attorney segregate and deposit client trust funds into a trust account and not in the attorney's general operating account. Courts

interpreting former Rule 8–101 note an intent by the State Bar that the client retain an ownership interest in a retainer unless the agreement provides for a "classic retainer." *See Read v. State Bar of California,* 53 Cal.3d at 420, 807 P.2d 1047, 279 Cal.Rptr. 818; *Baranowski v. State Bar of California,* 24 Cal.3d 153, 154 Cal.Rptr. 752, 757, 593 P.2d 613, 618 (1979). *See also* San Francisco Bar Legal Ethics Informal Opinion 1973–14.

To the extent that the client retains an interest in a retainer under California law, a pre-petition retainer paid to an attorney becomes property of the estate upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a)(1). The purpose of a security retainer is to provide security to an attorney for payment of services. The attorney perfects a security interest in money by taking possession of the funds. The Uniform Commercial Code, adopted in California, expressly permits the creation of a security interest in money, which can only be perfected by possession.

> A security interest in ... money ... may be perfected by the secured party's taking possession of the collateral.... A security interest is perfected by posses-

*Ranch Partnership,* 116 B.R. 208 (Bankr.C.D.Cal. 1990); *In re C & P Auto Transport, Inc.,* 94 B.R. 682 (Bankr.E.D.Cal.1988); *In re Kinderhaus Corp.,* 58 B.R. 94 (Bankr.D.Minn.1986).

**11.** The Court in *McDonald* identified three types of retainers typical to fee arrangements. Although different terminology may be used by other authors, the concepts remain the same.

A "classic" retainer insures an attorney's availability over a period of time; it is considered earned upon receipt, whether or not services are actually provided.

An "advance payment" retainer is a present payment compensating an attorney for services to be performed in the future; it is also considered earned upon receipt. It may be a "flat fee," or it may be paid with the expectation that there will be further compensation sought once the retainer is exhausted. The determination whether the client retains an interest in an advance payment retainer is unsettled in California as the California Supreme Court expressly declined to answer whether the funds are characterized as money "received or held for the benefit of clients." *Baranowski v. State Bar,* 24 Cal.3d 153, 164, 593 P.2d 613, 618, 154 Cal.Rptr. 752, 757 (1979).

A "security retainer" is aptly named because the purpose is to secure payment for future services; it remains property of the client until applied to charges for services actually rendered. The unused portion of a security retainer is refundable to the client. A security retainer fee agreement should provide that:

> (1) the retainer is deemed a trust fund, subject to deposit in the firm's client trust account ...; (2) any interest accruals on the retainer amount are added to the retainer; (3) the firm has the right to apply against the retainer amount all accrued time charges and reimbursable costs on a monthly basis upon the submission to the client of detailed statements of such time charges and reimbursable costs ... and (4) if either the client or the firm notifies the other party in writing of its decision to terminate the agreement, the balance of the retainer amount may be applied to all accrued but unpaid charges ... and any remainder will be returned....

Bernstein, *Collier Bankruptcy Compensation Guide,* ¶ 2.03 at 2–13 (1989).

**12.** Except as ... provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties.... Cal.Code Civ.P. § 1021.

sion from the time possession is taken without relation back and continues only so long as possession is retained.... Cal.Com.Code Ann. § 9305. Counsel holding a retainer thus has a validly perfected security interest in the funds in his possession. Numerous courts have noted that a retainer is property of the estate but that the debtor's counsel also has an interest in the retainer. *See, e.g., In re Kinderhaus Corp.,* 58 B.R. 94 (Bankr.D.Minn.1986); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569 (Bankr.N.D.Tex.1986).

### 2. *Retainers Paid By GOCO Are Not Subject to New West's Security Interest.*

The Court's determination that the retainers are property of GOCO's bankruptcy estate does not necessarily lead to the conclusion that the retainers are New West's cash collateral, as New West theorizes. To constitute cash collateral under section 363(a), the retainers must be subject to New West's security interest. New West lost its right to the rents that were transferred prior to its demand because it failed to enforce the assignments of rents by making demand prior to the transfer to the Law Firms. New West's argument is further diminished because the rents were commingled in the debtor's bank account and cannot be traced.

Highlighting this analysis is the treatment of the unused portion of the retainer that Wilson, Sonsini returned to GOCO after the law firm completed its legal work. GOCO segregated these funds from its post-petition rents. New West asserts that the returned funds are now cash collateral because they are proceeds of rents currently in the possession of the estate. However, New West's security interest in the rents was unenforced and terminated when the rents were transferred pre-petition. The lien did not attach to proceeds after transfer, and the proceeds are not traceable. Thus, the lien cannot be revived by New West attempting to characterize the funds returned to GOCO by Wilson, Sonsini post-petition as cash collateral.

Although New West complains that this result allows a debtor to evade a perfected assignment of rents by transferring funds to an attorney pre-petition, a secured creditor has the ability to protect itself by making a timely demand to enforce its assignment of rents. A borrower can only protect itself to the extent it can negotiate the terms of an assignment of rents.

## V. CONCLUSION

Under both California law and federal bankruptcy law, a secured creditor that has not enforced a properly perfected assignment of rents is not entitled to possession of rental proceeds that are transferred to third parties. Therefore, New West's motion for the return of pre-petition retainers is denied, and New West is not entitled to adequate protection for use of the funds. Accordingly, IT IS SO ORDERED.