**In re Steven R. BABBIDGE, Debtor.**

**Bankruptcy No. 89–61045.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 16, 1993.

Carson W. Elliff, Springfield, MO, for petitioner.

Raymond I. Plaster, Springfield, MO, for respondent.

### *MEMORANDUM OPINION AND ORDER*

KAREN M. SEE, Bankruptcy Judge.

Timothy J. Seyferth filed a proof of claim alleging a secured claim for $575,378.75, plus interest from June 21, 1989, based on a settlement agreement. Trustee Thomas Carlson filed an objection to the claim. Seyferth requested a hearing to determine his secured status and whether he is entitled to funds in possession of a third party but claimed by the trustee. At a hearing on June 18, 1993, the court requested briefs and continued the hearing to July 15, 1993. After review of briefs, exhibits, and oral arguments the court finds the following facts are essentially undisputed.

### *I. FACTS*

Seyferth was seriously injured in an industrial accident and received a settlement for his support. He invested part of the settlement in California limited partnerships formed by Steve Babbidge and Gary Opdahl. When the limited partnerships failed to produce the financial return promised by Babbidge, Seyferth sued Babbidge and other parties, including Opdahl. The parties settled the suit and on September 30, 1983, executed an Assignment of Note, Beneficial Interest Under Mortgage and Beneficial Interest In Certain Limited Partnerships As Collateral Security.

The Settlement Agreement executed by Babbidge and Opdahl assigned to Seyferth, as security for payment of a note payable to Seyferth, "all right, title and beneficial interest" Babbidge and Opdahl had in California limited partnerships named Havendale Plaza Associates, Havendale Plaza Associates I, Havendale Plaza Associates II and 3040 Oakmead Associates. The partnerships held as an asset a note secured by a mortgage ("Crocker note and mortgage") on real estate in Polk County, Florida known as Havendale Plaza. The Settlement Agreement also assigned whatever interest Babbidge and Opdahl had under the Crocker mortgage, and the legal description of the property was set forth in detail.

The Crocker note and mortgage were assets of the partnerships, so Babbidge and Opdahl could not grant a security interest in or assignment of the note or mortgage; they granted a security interest only in their partnership interests, which included the right to distribution of funds eventually received by the partnerships when the Crocker note was paid. The description of the mortgage and real estate in the Settlement Agreement served only to identify assets of the partnerships in which Babbidge and Opdahl had partnership interests.

Seyferth filed the Settlement Agreement with the California Secretary of State on December 3, 1987. He also filed the Settlement Agreement with the recorder of Polk County, Florida, where the real estate was located.

Babbidge and Opdahl failed to pay the note, so Seyferth filed suit in California state court to enforce the Settlement Agreement. He received a summary judgment on May 30, 1989, against Babbidge, Opdahl and Steven R. Babbidge & Associates for $575,378.75, plus interest at the rate of 10% per annum, representing the unpaid principal and interest on the note.

In October 1989, Steven Babbidge filed a bankruptcy case in Missouri. The Crocker note was paid in August 1990, with the Havendale partnerships receiving approximately $956,000. Upon payment of the Crocker note to the partnerships, Gary Opdahl established an account in his control from which he paid certain partnership expenses. After payment of expenses, Opdahl opened a separate account and deposited the remaining proceeds from the Crocker note. From the second account, Opdahl distributed payments to the limited partners, including himself. Pursuant to the settlement with Seyferth, Opdahl then paid his share to Seyferth.

Opdahl held Babbidge's share of approximately $132,000 ($142,000 according to Seyferth) in the account and did not distribute it due to potential conflicting claims to the funds, and due to the filing of Babbidge's bankruptcy case. Based on evidence the parties presented at the hearing, the court finds Opdahl did not commingle any funds from the Crocker note with any funds of debtor Babbidge. Opdahl deposited the proceeds of the note in a separate account and then transferred the remainder to a second separate account, both of which were under his exclusive control.

Following Opdahl's refusal to turn over Babbidge's share of the distribution from collection of the Crocker note, in February 1991 Seyferth filed an action in California to obtain the funds from Opdahl. In that suit, Opdahl moved to substitute certain parties for Opdahl, including the trustee and any other parties who claimed to have an interest in the funds.

On June 9, 1992, this court entered an Order Overruling Motion for Reconsideration of Orders Overruling Motion to Dismiss and Adjudication of Bankruptcy, Consolidating Cases, and for Turnover. The Order denied reconsideration of two earlier orders. The first order consolidated the limited partnerships known as 3040 Oakmead Associates, Havendale Plaza Associates I "A" and Havendale 2 Associates into the Babbidge bankruptcy case, and the second ordered Opdahl to turn over to the bankruptcy estate funds he held, and permitted Seyferth to take action to preserve whatever claim he had to the funds without being prejudiced by the turnover order against Opdahl. Opdahl has appealed the portion of the order denying reconsideration which consolidated the partnerships into the Babbidge bankruptcy case, but he has not appealed the turnover portion of the order or filed a request for stay or a supersedeas bond. Opdahl has not complied with the turnover order.

Previously, Seyferth's counsel filed two identical claims, Nos. 7 and 200, listing Seyferth as a secured creditor for $575,378.75 plus interest from June 21, 1989. The second, duplicate claim was filed after counsel received a notice that all claims must be filed by a certain date. The trustee filed an objection to the claims. In response, Seyferth requested a hearing to determine the status of the claim and to determine whether Seyferth is entitled to the funds that were the subject of the Turnover Order. No party, other than the trustee through the operation of 11 U.S.C. § 544, has claimed a secured interest in the funds held by Opdahl from payoff of the Crocker note.

The funds subject to the turnover order apparently are still in Opdahl's possession, although earlier the trustee commenced proceedings to obtain possession of the funds. The parties in this matter do not dispute that Opdahl filed a motion in the California action requesting that the state court permit him to pay the remaining

funds into court in order to allow the court to determine which parties are entitled to the funds.

## II. DISCUSSION

■ The issue is whether the Settlement Agreement filed centrally with the California Secretary of State constituted a valid absolute assignment or granted an effective security interest to Seyferth. The court finds the Settlement Agreement granted an enforceable security interest in Babbidge's and Opdahl's partnership interests, and it is not necessary to determine whether the document also constituted a valid absolute assignment.

California's version of the Uniform Commercial Code in § 9401 provides central filing to perfect a security interest except in limited circumstances. Florida statute §§ 695.01 and 28.222 require parties, to make a mortgage valid and effective against creditors or subsequent purchasers for valuable consideration and without notice, to record it in the county in which the affected real estate is located.

The parties agree that the centrally filed Settlement Agreement constitutes a financing statement pursuant to applicable California law. The court finds the Settlement Agreement grants a security interest in the partnership interests assigned to Seyferth, which was properly perfected by filing the Settlement Agreement with the California Secretary of State in compliance with applicable California law.

Whether filing of the Settlement Agreement was the proper method of perfecting a security interest in an assigned limited partnership interest was not an issue. *See In re Witherell Corp.*, 146 B.R. 715, 717[4] (Bankr.E.D.Mich.1992) (failure to file a financing statement resulted in lack of perfection of a security interest in a partnership interest); *In re McAllister*, 52 B.R. 293, 294 (Bankr.E.D.Tenn.1985) (security interest in partnership interest was perfected by filing a financing statement with the Secretary of State). It is also noted that the trustee did not contest Babbidge's authority under the partnership agreements to assign or pledge his partnership interest.

On the date Babbidge's bankruptcy case was filed in October 1989, Seyferth's perfected security interest was in Babbidge's and Opdahl's assigned partnership interests pursuant to the Settlement Agreement. It was not a security interest in partnership assets directly. On the date of bankruptcy, it was not a security interest in proceeds, as argued by the trustee, because the Crocker note had not yet been paid to the partnerships. However, on the issue of identification of proceeds, Seyferth supports his claim to proceeds of the Crocker note by the reference to the Crocker note in the Settlement Agreement.

The trustee argued that the assignment or security interest was in the Crocker note directly, and therefore in proceeds of the Crocker note. The trustee relied on *In re Goco Realty Fund I,* 151 B.R. 241 (Bankr.N.D.Calif.1993), which pertained to perfection and enforcement of an interest in rents pursuant to an assignment of rents clause. *Goco* addressed a situation where cash proceeds of rents were in existence pre-petition, and the secured creditor had taken no action to enforce its interest in the rents or proceeds. The court in *Goco,* 151 B.R. at 248, noted that a secured creditor's priority to receive rents is determined only after the creditor takes steps to enforce the perfected security interest. *See also In re Foxhill Place Associates,* 119 B.R. 708 (Bankr.W.D.Mo.1990), construing Kansas law and Missouri law relating to enforcement of a security interest in rents. These cases hold that the issue of enforcement of a security interest in rents is separate from the issue of perfection, and a creditor can take certain post-petition actions to enforce a previously perfected security interest without violating the automatic stay.

■ *Goco* is not applicable because Seyferth's security interest was in the two individuals' partnership interests, and not in the Crocker note and mortgage directly. Thus, an argument that the secured creditor was required to take steps to enforce the security interest as to proceeds of the note is not fitting. However, even assuming application of *Goco,* the trustee's argu-

ment fails because the following actions taken by Seyferth were sufficient to trigger enforcement of a security interest in proceeds: a demand to Opdahl for the funds after the partnerships received them; filing suit in California demanding the funds from Opdahl; and filing pleadings in Babbidge's bankruptcy case, including a motion to intervene resulting in the court granting Seyferth the right to pursue his claim, a notice of appeal regarding the order to consolidate the partnerships into the Babbidge bankruptcy, and a proof of claim claiming to be secured.

Opdahl has appealed the order consolidating the partnerships into the Babbidge bankruptcy. The only issue on appeal is the issue of consolidation (and appellants have not filed any request for stay or supersedeas bond). The turnover portion of the order regarding the funds held by Opdahl is final. Opdahl has not yet complied with the turnover order.

The trustee also contends there was no enforceable security interest in funds from payoff of the Crocker note pursuant to California Code § 9306(4), which deals with proceeds. The court does not find that Seyferth's security—the partnership interests assigned by Babbidge and Opdahl— was converted to proceeds when the partnership received funds from payoff of the Crocker note. However, even assuming Seyferth's interest was in proceeds after the Crocker note owned by the partnerships was paid, § 9306(4) does not affect the validity of Seyferth's secured claim.

Section 9306(4)(a) is inapplicable because it covers only noncash proceeds held in a separate account. Sections 9306(4)(b) and (c) are inapplicable because they deal only with proceeds deposited in an account prior to insolvency proceedings, and because there was no commingling of funds by Opdahl when he placed the funds from payoff of the Crocker note in a separate account.

Section 9306(4)(d) is inapplicable because Opdahl did not place any funds in an account of the debtor. In the event of an insolvency of the debtor, § 9306(4)(d) limits a continuing perfected security interest of a creditor in proceeds if such proceeds have been commingled into a debtor's account with other funds. In this case, there has been no commingling of funds. Opdahl placed the funds from payoff of the Crocker note in an account under his control, and he never commingled the funds with any account of Babbidge. In fact, Opdahl placed the remaining funds from the Crocker note in a second separate account, under his control, from which he made distributions to limited partners. The remaining funds, to the knowledge of Seyferth and the trustee, remain in this second account.

Even assuming the funds from the Crocker note were proceeds, § 9306(2) permits Seyferth to maintain a continuously perfected security interest in the remaining funds because the funds held by Opdahl are identifiable proceeds. In addition, § 9306(3)(b) does not cause the perfected security interest of Seyferth to become unperfected with the passage of 10 days after receipt of the proceeds by the partnerships because there was a filed financing statement covering the collateral and the proceeds are identifiable cash proceeds in a separate account maintained by Opdahl.

For the foregoing reasons, the court concludes that Seyferth has a valid, perfected secured claim in all of Babbidge's share of the funds received by Opdahl from payoff of the Crocker note, plus any accumulated interest. No other party has filed a secured claim in the bankruptcy case claiming a security interest in funds held by Opdahl, and Opdahl did not appeal the turnover order or the turnover portion of the order denying reconsideration of the consolidation and turnover orders.

Accordingly, it is ordered, adjudged and decreed as follows:

1. The trustee's objection to the proof of claim of Timothy Seyferth is overruled.

2. Timothy Seyferth has a valid, duly perfected security interest in the funds which were Steven Babbidge's share of the distribution of the Crocker note.

3. The holder of the funds, whether the trustee Thomas Carlson, or Gary Opdahl,

shall turn over the funds to Timothy Seyferth.