**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Citytrust**

v.

**COLONIAL CROMWELL COMMONS LIMITED PARTNERSHIP, et al.**

**Eric V. LITSKY,**

v.

**CROMWELL COMMONS LIMITED PARTNERSHIP and Federal Deposit Insurance Corporation, as Receiver for Citytrust.**

Civ. Nos. 3:94CV95(TFGD), 3:94CV1550(TFGD).

United States District Court, D. Connecticut.

March 20, 1995.

Glory Lena, William Fish, Tyler Cooper & Alcorn, Hartford, CT, for FDIC.

Joseph Aceto, Aceto & Wells, Hamden, CT, for Joseph Aceto.

Lawrence Lissitzyn, Ried & Riege, P.C., Hartford, CT, for Cromwell Commons.

George Purtill, Purtill, Purtill & Pfeffer, Glastonbury, CT, for Eric Litsky.

DALY, District Judge.

After careful review and absent objection, Magistrate Judge Eagan's Recommended Ruling is hereby AFFIRMED, APPROVED AND ADOPTED.

SO ORDERED.

### RECOMMENDED RULING ON APPLICATION FOR TURNOVER ORDER

(Doc. # 6 in 3:94CV1550)

EAGAN, United States Magistrate Judge.

The instant action involves, *inter alia*, a priority dispute between the Federal Deposit Insurance Corporation, as Receiver of Citytrust (hereinafter "FDIC") and Eric V. Litsky. Both the FDIC and Litsky claim entitlement to funds currently held by the court-appointed rent receiver of the Cromwell Commons Shopping Center in Cromwell, Connecticut. Pursuant to Conn.Gen.Stat. § 52–356b and Rule 69(a) of the Federal Rules of Civil Procedure, Eric Litsky has asked this Court to issue an order directing that all property held by the rent receiver be applied to satisfy a state court judgment he obtained against the Cromwell Commons Limited Partnership (hereinafter "Cromwell Commons").[1] For the reasons set forth below, Mr. Litsky's Application for Turnover Order is DENIED.

### Background

In their submissions to the Court and at a hearing held on the pending motion held on November 15, 1994, the parties apparently agree to the following. On or about August 14, 1987, Cromwell Commons executed a $10 million mortgage note to Citytrust. To secure the note, Cromwell Commons executed a mortgage and assignment of leases in favor of Citytrust. On August 19, 1987, Citytrust recorded the mortgage and assignment in the Cromwell land records. The FDIC, in its capacity as Citytrust's receiver, is now the holder of the note, mortgage and assignment of leases.

In relevant part, the assignment of leases provides:

FOR VALUE RECEIVED: The Assignor hereby grants, transfers and assigns to the Bank all of the right, title and interest which the Assignor, as lessor, has

---

1. This entity was formerly known as "Colonial Cromwell Commons Limited Partnership."

and may have in the leases now existing or hereafter made and affecting all or any part of the real property described in Schedule A hereto [the shopping center], including but not limited to the leases described in Schedule B hereto, as said leases may have been, or may from time to time be hereafter, modified, extended or renewed, together with all of the rents, income and profits due and becoming due therefrom....

THIRD: So long as there shall exist no default by the Assignor under the Note, the Mortgage, this Assignment or any one or more of the leases hereby or pursuant hereto assigned, the Assignor shall have a license to manage and operate the Mortgaged Premises and to collect, receive and apply for its own account all rents, issues and profits accruing by virtue of the leases in question to which they the Assignor may otherwise be entitled and to execute and deliver proper receipts and acquittances therefor.

FOURTH: Immediately upon the occurrence of any default by the Assignor under the Note, the Mortgage, this Assignment or any one or more of the leases hereby or pursuant hereto assigned, and until such default shall have been cured as hereinafter defined, the license mentioned in "THIRD" next above shall cease and determine, and in such event the Bank is hereby expressly and irrevocably authorized to enter and take possession of the Mortgaged Premises by actual physical possession, or by written notice sent by registered mail to the Assignor, and no further authorization shall be required. Following such entry and taking of possession, the Bank, as fully as the Assignor might do, may: ...

(d) Demand, collect, sue for, attach, levy, recover, receive, compromise and adjust, and make, execute, and deliver receipts and releases for, all rents, issues and profits that may then be or may thereafter become due, owing or payable with respect to the Mortgaged Premises or any part thereof from any present or future lessees, tenants, subtenants, or occupants thereof....

(i) Generally do, execute and perform any other act, deed, matter or thing whatso[e]ver that ought to be done, executed, performed in and about or with respect to the Mortgaged Premises.

The assignment further provides that it "shall be governed by and construed according to the laws of the State of Connecticut."

Eric Litsky was a leasing agent for Cromwell Commons. In an action brought in the Superior Court for the Judicial District of Middlesex at Middletown, Mr. Litsky claimed that Cromwell Commons had failed to pay him certain leasing commissions. On August 30, 1991, Eric Litsky obtained a state court judgment against Cromwell Commons in the amount of $104,848.40. On September 26, 1991, and again on August 4, 1992, he recorded a real property judgment lien against the mortgaged property on the Cromwell land records in the amount of his judgment. On August 13, 1992, Mr. Litsky recorded a personal property judgment lien in the same amount with the Connecticut Secretary of State. The personal property judgment lien purportedly covers the accounts, bank accounts, accounts receivable, cash on hand, rents and leases of the judgment debtor, Cromwell Commons.

On November 24, 1992, HRA Cromwell Commons, Inc. (hereinafter "HRA Cromwell") purchased the general partnership interest in Cromwell Commons from the bankruptcy trustee of Colonial Realty Company. HRA Realty Advisors, Inc. (hereinafter "HRA Realty") was eventually established as the manager of the property.

On August 16, 1994, the Connecticut Superior Court issued an execution for Litsky against Cromwell Commons in the amount of $97,754.10. On August 19, 1994, a sheriff served the execution upon several entities, including Cromwell Commons, HRA Cromwell, HRA Realty, and all the tenants of the property. On October 26, 1994, an execution was served on the law firm of Tyler, Cooper and Alcorn as agent for the FDIC.

Cromwell Commons, HRA Cromwell and HRA Realty have not paid any funds toward the judgment execution. However, since August 19, 1994, Litsky's levying officer has collected $13,504 from tenants.

On August 19, 1994, HRA Realty, as property manager, held Cromwell Commons funds in two bank accounts. One account in the amount of $64,316.27 was maintained at Shawmut Bank; the other in the amount of $13,078.12 was maintained at Northern Trust Bank of Florida. With the possible exception of a small amount of interest earned on the Northern Trust account, all sums in the two accounts were derived primarily from shopping center rent.

On September 2, 1994, HRA Realty transferred $62,502.27 from the Shawmut Account and $13,078.12 from the Northern Trust Account to the FDIC through its counsel, Tyler, Cooper & Alcorn. Since that date, the FDIC has collected an additional $10,118.98 from tenants. In addition, the FDIC has authorized the disbursement of $15,403.56 to certain creditors of Cromwell Commons.

On October 11, 1994, Eric Litsky filed the instant motion in which he asks the Court to order Cromwell Commons, HRA Realty, HRA Cromwell, the FDIC and Tyler, Cooper and Alcorn to deliver all funds in their possession which are held for the benefit of Cromwell Commons to his levying officer. On October 26, 1994, this Court (Cabranes, U.S.C.J. sitting by designation) entered a consent order appointing Joseph Aceto as rent receiver for the property. In accordance with this order, the FDIC turned $70,-295.81 over to Aceto. Subsequently, additional rents received by HRA Realty or the FDIC have been forwarded to Aceto.

### Discussion

The FDIC claims that, by virtue of the assignment of rents, it is entitled to retain the funds currently in the hands of the rent receiver and to continue to collect rents from shopping center tenants. Mr. Litsky, on the other hand, claims that the FDIC failed to timely take necessary steps to enforce its rights under the assignment. He argues that he is entitled to satisfy his judgment both from rents which were in existence on the date on which his execution was served and from future rents. Both claim that Connecticut law supports their respective positions.

Under Connecticut law, an assignment of rents which is executed as part of a mortgage transaction constitutes a conveyance of an interest in land. See Matter of Sansone, 126 B.R. 16, 18 (Bankr.D.Conn. 1991); Danbury Hospital v. Kovacs, 10 Conn.L.Rptr. 24 (October 11, 1993). Moreover, "Connecticut case law, fairly construed, supports the conclusion that a mortgagee's right to rents is perfected from the time that the mortgage is recorded." Sansone, 126 B.R. at 18. This conclusion is supported by Conn.Gen.Stat. § 49–10, which provides:

> Whenever any debt or other obligation secured by mortgage, assignment of rent or assignment of interest in a lease, is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, as security for the debt or obligation, and that assignment has been executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgment of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease, shall vest in the assignee.

Accordingly, the FDIC's right to rents was perfected upon Citytrust's recording of the mortgage and assignment of rents on the Cromwell land records.

Nevertheless, Litsky maintains that unless and until a holder of an assignment takes affirmative action to possess the rents from the mortgaged property, an executing judgment creditor may obtain priority over those funds. However, many of the cases upon which Mr. Litsky relies address the relationship between the mortgagor and mortgagee; they do not necessarily address the status of an intervening creditor. See Matter of Guay, 138 B.R. 3, 4 (Bankr.D.Conn.1992) ("It is well settled that in Connecticut a mortgagor in possession of realty is entitled to the rents ... until the mortgagee asserts its right to collect the rents by taking an affirmative action to secure the rents from the mortgaged premises."); Matter of Coniam, 9 B.R. 306, 309 (Bankr.D.Conn.1981) ("[T]he holder of a defaulted mortgage and an assignment of rents, must take affirmative ac-

tion to secure rents from the mortgaged premises.")

 Courts which have addressed this issue have recognized that the distinction between the concepts of "perfection" and "enforcement" is dispositive. "Perfection" is the process by which a secured party puts third-parties on notice of its interest in an asset. "Enforcement," however, refers to the steps that secured party must take to enforce its rights in the collateral. *See In re Vienna Park Properties*, 136 B.R. 43, 51 (Bankr.S.D.N.Y.1992), *aff'd*, 976 F.2d 106 (2d Cir.1992); *see also In re Creekstone Apartments Associates*, 165 B.R. 845 (Bankr. M.D.Tenn.1993). In other words, perfection provides protection against an intervening third party, while enforcement gives the lender the right to collect the rents, thereby causing his interest to become choate. *In re Goco Realty Fund I*, 151 B.R. 241, 248 (Bankr.N.D.Cal.1993). Thus, the act of perfection confers significant rights against third parties, including priority over the claims of subsequent encumbrancers. *See Vienna Park*, 136 B.R. at 54 ("[T]he properly recorded assignment of rents provision conferred a security interest in after-acquired rents which survives the bankruptcy even though it cannot be enforced because of the automatic stay."); *In re Scottsdale Medical Pavilion*, 159 B.R. 295, 300 (9th Cir.Bankr.App.P.1993) (Creditor may have effective interest in rents, although it does not have present right to enforce that interest.)

 Here, the fact the FDIC did not immediately enforce its right to the rents at issue does not change the fact that, at the time of the recording of the assignment, that right, though inchoate, is afforded priority over subsequent encumbrancers like Mr. Litsky. *Cf. Vienna Park*, 976 F.2d at 112 ("The failure of a secured party to perform enforcement procedures prior to bankruptcy merely renders an interest inchoate, not nullified.") As one court has note, delayed enforcement may have unfavorable consequences for the secured party:

> Additionally, California law holds that even when an assignment is absolute, an affirmative enforcement step in addition to perfection is a prerequisite to the lender's

possession of the rents, and that the lender is entitled to all the rents, issues, and profits from the time of demand upon the defaulting borrower to deliver possession and pay over the rents. . . . In each of the cases cited, the issue was whether the lender or the borrower was entitled to the rents that accrued after the borrower's default. These authorities make clear that upon default, enforcement brings an inchoate interest to fruition and the lender acquires priority in rents arising only after enforcement. Any other interpretation will only lead to confusion in the market place by leaving open to question entitlement to monies commingled or transferred to third parties.

*In re Goco Realty Fund*, 151 B.R. at 248 (citations omitted). Here, however, the FDIC does not seek to recover assets already paid to third parties, nor is there a claim that the FDIC holds assets which are commingled with funds rightfully belonging to third parties. Under these facts, the Court sees no basis for finding that Mr. Litsky's interest has priority over the perfected interest of the FDIC in rents which existed and were segregated at the time of enforcement.

### Conclusion

Mr. Litsky's application is DENIED.

Any objection to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rules 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).